# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60065

RONALDO DE LIMA MARQUES,

      Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

      Respondent

United States Court of Appeals
Fifth Circuit

**FILED**
August 19, 2016

Lyle W. Cayce
Clerk

Petitions for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Ronaldo De Lima Marques lawfully entered the United States in August 2001 on a nonimmigrant visa. He married a United States citizen in 2005. On the basis of his marriage, Marques adjusted his status to that of a legal permanent resident. Marques's marriage was a sham, though. Accordingly, the Board of Immigration Appeals ("BIA") held Marques removable. We GRANT Marques's petition for review of the BIA's order of removal and VACATE the BIA's judgment. We DENY as MOOT Marques's petition for review of the BIA's decision denying a motion to reopen.

No. 14-60065

FACTUAL AND PROCEDURAL BACKGROUND

Ronaldo De Lima Marques is a native and citizen of Brazil who was first admitted into the United States on August 27, 2001. Marques entered as a nonimmigrant B-2 visitor with authorization to remain in the United States for six months. He subsequently enrolled in college and changed his status to that of a nonimmigrant student with authorization to remain in the United States for the duration of his studies but no later than December 30, 2005.

In August 2005, Marques married a United States citizen who was said to be named Olga Jean Flores. Her actual name was Diana Hernandez, and that is what we call her here. The record shows Marques and Hernandez were married on August 14, 2005, by a justice of the peace in Plano, Texas. Hernandez also married another man that day, though not in a dual ceremony. A different justice of the peace in nearby Dallas performed the other wedding. In late 2005, Hernandez filed an I-130 Petition for Alien Relative on behalf of Marques. Marques attached a G-325 Biographic Information Sheet indicating he had no prior spouses. Along with the I-130 Petition, Marques simultaneously filed an I-485 application for adjustment of status to become a legal permanent resident ("LPR") based on his marriage to a citizen. The application was approved on September 9, 2006.

Hernandez's mother operated an extensive marriage-fraud scheme that was uncovered by the Department of Homeland Security ("DHS") through an investigation titled "Operation Phony Love." The scheme connected foreign nationals seeking permanent residency in the United States with relatives of Hernandez's mother. DHS found two checks written from Marques to Hernandez's mother, one for $500 and the other for $2,000. DHS also learned Hernandez had married at least five spouses in addition to Marques. Further, DHS discovered Marques had been married to Fabiana Galvao since March 2001. Galvao, like Marques, was not a U.S. citizen. She also paid to marry

one of Hernandez's relatives in order to support an application for her lawful permanent resident status.

In 2008, Hernandez pled guilty and was convicted of conspiracy to commit visa fraud. During an interview with DHS investigators, Hernandez admitted she had entered into a fraudulent marriage with Marques. Around the same time, Marques divorced both Galvao (in February 2008) and Hernandez (in August 2008). Marques claims he has since married a different U.S. citizen.

On April 5, 2010, DHS issued a Notice to Appear charging that Marques was subject to removal as an alien who, at the time he adjusted his status, was inadmissible under 8 U.S.C. § 1227(a)(1)(A). The Notice identified two bases of inadmissibility: (1) at the time Marques adjusted his status, he did not possess a valid unexpired immigrant visa, reentry permit, or other valid entry document, citing 8 U.S.C. § 1182(a)(7)(A)(i)(I), and (2) he adjusted his status through marriage fraud, citing 8 U.S.C. § 1182(a)(6)(C)(i). Marques denied both charges at a July 2011 initial appearance before an Immigration Judge ("IJ"). One month later, DHS withdrew the charge of marriage fraud.[1] The claimed fraud nonetheless remained central to DHS's argument that Marques did not possess a valid immigration document.

On January 4, 2012, the IJ found Marques removable because "he was not in possession of a valid unexpired immigrant visa" at the time he adjusted his status. We quote the IJ's finding to make clear that the visa is the document, out of the various possibilities listed in the charge (e.g., immigrant

---

[1] In a March 2014 letter to the BIA in support of the motion to reopen, Marques's former attorney wrote that during pretrial conferences, the Government asked whether Marques would concede both charges and then seek relief from removability. After Marques said he would not concede, the charge relying on marriage fraud was withdrawn. At oral argument, the Government stated that because Marques would not concede the grounds for removal, it dropped the charge whose proof would be more involved.

No. 14-60065

visa, reentry permit, other valid entry document), that the IJ says was needed. Specifically, the IJ found that the I-130 Petition filed on Marques's behalf by his ostensible wife was invalid because it was based on a fraudulent marriage, and thus "[a]bsent a valid I-130 petition, [Marques] was not eligible for the visa that allowed him to adjust his status." Marques filed a timely notice of appeal.

On December 31, 2013, the BIA affirmed the IJ's decision. Marques filed a timely motion with the BIA to reopen, which was denied on August 7, 2014. On August 13, 2014, Marques filed a timely petition for review with this court.

## DISCUSSION

On petition for review, we generally examine only the BIA decision and not that of the IJ. *Majd v. Gonzales,* 446 F.3d 590, 594 (5th Cir. 2006). There is an exception which we have articulated in different ways. Perhaps one extreme is to say we will review the IJ's decision if "the BIA summarily affirms the IJ's decision without opinion . . . ." *Id.* A lighter touch in phrasing is that we allow review of both if "the IJ's ruling affects the BIA's decision . . . ." *Zhu v. Gonzales,* 493 F.3d 588, 593 (5th Cir. 2007). It is fair to say we will review the IJ's decision in both situations. Here, the BIA decision said: "We adopt and affirm" the IJ's decision. The BIA then gave detailed responses to each argument. Consequently, we review only the BIA decision.

The BIA ordered Marques removed under Section 1227(a)(1)(A). It held that Marques was inadmissible when he adjusted his status because he did not at that time possess a "valid unexpired immigrant visa." Marques contends the statute the BIA relied on, Section 1182(a)(7)(A)(i)(I), is inapplicable because it expressly applies to someone who is making an "application for admission," which means it should not apply to aliens like himself who are already legally present and do not need to be admitted.

4

The issue is a question of law, which we review "*de novo*, giving considerable deference to the BIA's interpretation of the legislative scheme it is entrusted to administer." *Id.* at 594 (footnote and quotation marks omitted). The Government argues Section 1182(a)(7)(A) is ambiguous and we should defer to the BIA's interpretation pursuant to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* compels a two-part inquiry. First, we determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. Second, if there is a gap in the statute, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

We now apply these principles to the statutes relevant to this case.

*I.      The statutes underlying the charge against Marques*

"In determining whether Congressional intent is clear (and therefore, deference's not being accorded the agency), we . . . look first and foremost to the language of the statute." *Martinez v. Mukasey*, 519 F.3d 532, 543 (5th Cir. 2008). "[P]lain statutory language is the most instructive and reliable indicator of Congressional intent." *Id.*

In this case, two provisions of the Immigration and Nationality Act ("INA") are relevant. They are the only statutes cited in the charge on which Marques was ordered removed. The first provides for removal of aliens who are, at the time of entry or adjustment of status, inadmissible under some other provision of the INA. The other statute is the needed substantive provision that allegedly rendered Marques "inadmissible." We review the general removal statute first.

No. 14-60065

*A. Section 1227(a)(1)(A)*

The first relevant statute is a subpart of Section 1227. The entire statute is captioned "Deportable aliens." Subpart (a) consists of the following preface:

> Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: . . . .

8 U.S.C. § 1227(a). Subsections (a)(1) through (a)(6) identify different classes of deportable aliens. Some of the classes not relevant here are clearly bounded, such as those guilty of certain criminal offenses, Section 1227(a)(2), or those who have illegally voted, Section 1227(a)(6). The class of deportable aliens into which the Government seeks to place Marques is more general:

> Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable.

*Id.* § 1227(a)(1)(A). We must look elsewhere in the INA to find why Marques might have been inadmissible at the time he adjusted his status.

Before moving into the analysis further, we explain that the process of "adjustment of status" is "a procedure in which certain aliens physically present in the United States can obtain permanent resident status by adjusting their status without leaving the United States." RICHARD D. STEEL, STEEL ON IMMIGRATION LAW § 7.1 (2015 ed.). More on that later.

We now review the second relevant statute. It sets out the ground of inadmissibility that allegedly rendered Marques removable.

*B. Section 1182(a)(7)*

The BIA concluded Marques was inadmissible because of a statute which makes inadmissible "immigrants" who do not have certain documents. 8 U.S.C. § 1182(a)(7)(A). As noted already, Marques was admitted as a nonimmigrant in 2001. Inadmissibility of nonimmigrants is covered in a separate

6

subsection.  *Id.* § 1182(a)(7)(B).  The Government relies on the immigrant subsection because the adjustment that Marques was seeking in 2005–2006, after he became involved in marriage fraud, was to become an immigrant.

The title of Section 1182(a)(7) is "Documentation requirements."  The charge on which Marques was found removable cited the following subpart:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission —
>
> (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . .
> . . .
> is inadmissible.

*Id.* § 1182(a)(7)(A)(i)(I).

We have already mentioned that the BIA found that what Marques needed, but did not have, was a valid unexpired immigrant visa.  Section 1182(a)(7)'s document requirements are said to apply "at the time of application for admission";  the statute does not say it also applies at the time of adjustment of status as did Section 1227(a)(1)(A).

## II.  *Combining the two statutes*

We now merge our discussion of the two statutes.  Marques must be shown not to have had a "valid unexpired immigrant visa" "at the time of application for admission," a charge that relies on Section 1182(a)(7)(A)(i)(I), and therefore, to have been inadmissible under Section 1227(a)(1)(A).  Two hurdles exist for the Government.  First, the Government must convince us that an adjustment of status requires having a valid immigrant visa.  Second,

No. 14-60065

the Government must persuade that there is room in the meaning of "application for admission" to include an adjustment of status.

### A. Visas

The Government charged and the BIA held that Marques needed, but did not have, a valid unexpired immigrant visa at the time of his adjustment of status, thereby violating Section 1182(a)(7). In order for an adjustment of status to occur, these statutory requirements must be satisfied:

> The status of an alien who was inspected and admitted . . . may be adjusted . . . to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

None of this indicates that Marques would have actually gotten a visa. The record indicates that Marques received a "permanent resident card," the formal name for a green card, but no visa is in the record. Generally an immigrant visa is "issued by a consular officer at his office outside of the United States to an eligible immigrant under the provisions of this chapter." 8 U.S.C. § 1101(a)(16). Although it is unclear whether or when an applicant for adjustment of status might receive a physical visa, an applicant at least is assigned a visa number at the time an examiner approves the application. *See* AUSTIN T. FRAGOMEN, JR., ET AL., IMMIGRATION PROCEDURES HANDBOOK § 20:35. We conclude Marques likely received a visa number on September 9, 2006. He was interviewed that day about his application for adjustment of status; the Government states the application was approved that day.

Thus, upon the examiner's approval, Marques likely received a visa number on September 9. *See id.* If having the number is the equivalent of

8

having a visa, then Marques's visa came into existence the same day his status was adjusted, but the visa was invalid because it was acquired through the fraud in the I-130 filed by his supposed wife. Further, if the Government is correct that an adjustment of status is an admission into the United States — an issue we discuss next — then Marques's invalid visa came into existence at about the same time as did his equivalent of an application for admission.

Perhaps BIA could be granted *Chevron* deference on how we should understand Section 1182(a)(7)'s visa requirement. We need not decide, though, whether Marques held an immigrant visa at the time he adjusted status because of the results of the remainder of our analysis.

### B. *Application for admission*

Even if the BIA is correct that Marques needed and did not have a valid unexpired immigrant visa when he adjusted his status, more difficult is the other requirement: Section 1182(a)(7) is applicable only when an alien is making an *application for admission*, which the INA defines as "the application for admission into the United States . . . ." 8 U.S.C. § 1101(a)(4). Marques seemingly was not applying for admission. As an already admitted nonimmigrant, he was applying for an adjustment of status. The Government argues, though, that an adjustment of status results in a technical admission.

We and other circuit courts have heard a similar argument in another context. We have fairly uniformly said "no." This case offers a new context. We discuss first whether one of the statutes involved in this case supports the argument. Concluding it does not, we then examine the INA as a whole.

### 1. *Ambiguity from "in and admitted" in Section 1227(a)(1)(A)*

The Government argues that Section 1227(a)(1)(A) is ambiguous, so we need to give *Chevron* deference to the interpretation made by the BIA. We

emphasize one part of our earlier discussion of deference. "[W]hen reviewing an agency's construction of a statute that it administers, a court must determine first whether Congress has directly spoken to the question at issue." *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). If so, we "give effect to the unambiguously expressed intent of Congress," and if not we "must determine whether the agency's answer is based on a permissible construction of the statute." *Id.* Before we can give deference, then, we must conclude after our own textual analysis that a statute is ambiguous. *Id.*

To show ambiguity, the Government starts with the fact Section 1227(a) applies only to aliens who are "in and admitted" to this country. It then argues that subpart (1)(A) — the subpart relevant in this case —   provides

> two ways by which an alien may be "in and admitted" — via entry or via adjustment of status. Does the statute address only those "admitted" in some other status who subsequently adjust status, or does it also address those who were treated as "admitted" for other reasons? If someone who adjusted status was required to have some other entry to be considered "admitted" then the additional "or of adjustment of status" language becomes superfluous.

The Government argues that subpart (1)(A)'s reference to adjustment of status is unnecessary *unless* the adjustment causes an admission. If an adjustment is not an admission, then subpart (1)(A) would not apply unless the alien was "in and admitted" due to some other event, such as Marques's admission in 2001 as a nonimmigrant. Unless we accept that an adjustment causes an admission, the argument goes, we are nullifying the reference in (1)(A) to adjustment of status. The statute would have simply said it applied to aliens in and admitted to the country who were inadmissible at the time of *entry*.

We do not see what the Government sees. First, a reminder of the language in play from Section 1227(a)(1)(A): "Any alien [in and admitted to the United States] who at the time of entry or adjustment of status was within

one or more of the classes of aliens inadmissible by the law existing at such time is deportable." The INA is saying that if a category of inadmissibility applies at the time of an alien's entry or adjustment of status, then that alien who has entered or has had an adjustment of status may be deported. The statute also countenances that the grounds of inadmissibility can change through revisions to other sections of the INA. Further, it applies the law in existence at entry and at adjustment. If an alien was not inadmissible at the time of entry but later becomes inadmissible at the point of adjustment of status, the alien is deportable. To receive deference, the Government needs first to show us ambiguity. We find no superfluous or redundant wording in Section 1227(a)(1)(A).

There is another issue here. The Government, as part of the preliminaries to its argument about surplusage, said that ambiguity arises because of the interplay between the two relevant INA provisions. Though there was little briefing of this as a separate argument, interpretive difficulties can arise when one INA provision cross-references others. We dealt with such issues in two fairly recent opinions, where we had to determine "whether one section of the INA that cross-references another necessarily adopts the entirety of the second section — its limitations, qualifiers, or procedures." *Paz Calix v. Lynch*, 784 F.3d 1000, 1009 (5th Cir. 2015); *see also Nino v. Holder*, 690 F.3d 691, 697 (5th Cir. 2012). In one case we found ambiguity, *Paz Calix*, 784 F.3d at 1007, but not in the other, *Nino*, 690 F.3d at 697–98.

We see the question this way: When Section 1227(a)(1)(A) makes a generic cross-reference to all other statutes that make an alien inadmissible either at the point of entry or an adjustment of status, is it adopting only what another statute identifies as grounds for inadmissibility, or is it also adopting the other statute's limitations, such as when those grounds of inadmissibility apply? In both *Paz Calix* and *Nino,* we closely analyzed the text of the *cross-*

*referencing* statute to determine what it was adopting from the *referenced* statute. *See Paz Calix*, 784 F.3d at 1011–12; *Nino*, 690 F.3d at 697–98. We will do the same here.

In *Nino*, the cross-referencing statute defined eligibility for cancellation of removal; it had a condition that an alien not have been "convicted of an offense under" three other referenced statutes. *Nino*, 690 F.3d at 696 (citing 8 U.S.C. § 1229b(b)(1)(C)). One of the referenced statutes, the same Section 1227 involved in our case, placed certain limitations on which convictions would qualify for deportation, such as how close to the date of admission an offense was committed. *Id.* (citing 8 U.S.C. § 1227(a)(2)). We held that the cross-referencing statute was, for cancellation-of-removal purposes, unambiguously borrowing only the substantive offenses identified in Section 1227(a)(2); *i.e.*, the cross-referencing statute asked whether the alien had been "convicted under" Section 1227(a)(2)'s list of offenses irrespective of any limitations the Section itself would apply to a conviction. *Id.* at 697–98.

In this case, Section 1227 is not the statute which is being referenced as in *Nino*; it is the statute doing the referencing. Far from being unconcerned about the immigration consequences of convictions or other events identified in other statutes, Section 1227(a)(1)(A) unambiguously seeks out only such statutes that have a specific immigration consequence, namely, a statute that makes aliens "inadmissible" at the time of entry or adjustment of status. *See* 8 U.S.C. § 1227(a)(1)(A). If the relevant statute being referenced only applies at one of those points in time, Congress has unambiguously indicated we and the BIA must adhere to that limit. Thus, no *Chevron* deference is owed. *See Orellana-Monson*, 685 F.3d at 517.

In conclusion, we apply the law in existence at the time Marques adjusted his status. He was not inadmissible under Section 1182(a)(7), which applies only to applications for admission, unless the INA makes an

adjustment of status the equivalent of an admission.  We will discuss that question in the next section.  If an adjustment is not an admission, though, Marques's only admission into the country occurred when he entered as a nonimmigrant in 2001, approximately five years before the events at issue here.  There are no allegations that Marques violated document requirements at the time he entered the United States in 2001 on a nonimmigrant visa.

Section 1227(a)(1)(A) sets out two critical events in the immigration process, "entry" and "adjustment of status," and applies to either event any statute that identifies grounds for inadmissibility.  Nothing in Section 1227(a)(1)(A) supports that it, like the cross-referencing statute in *Nino*, allows ignoring the immigration-related limitations in the referenced statute.  Indeed, just the opposite is our reading of the statute.  We now turn to whether an adjustment of status is an admission.

### 2. *Adjustment of status as an application for admission*

We now examine the more general question of whether an *adjustment of status* will fit within the meaning of an *application for admission.* Two INA definitions are relevant.  The first term, *application for admission*, refers to "the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa." 8 U.S.C. § 1101(a)(4). Second, the terms *admission* and *admitted* are both defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A).  Under that definition, the class of "in and admitted" aliens removable under Section 1227(a) are those physically within the United States after lawful admission.

The Government's argument is that someone in the United States filing for an adjustment of status is also technically applying for admission.  The Government claims this interpretation is owed *Chevron* deference, but the

statutory language must be unclear for that level of deference to apply. *Chevron*, 467 U.S. at 842–43. The relevant term, an *application for admission*, is somewhat redundantly defined — but with just enough added to clarify — as an "application for admission into the United States . . . ." 8 U.S.C. § 1101(a)(4). Someone like Marques applies for an adjustment of status when he is already in the United States, so how could the Government be right?

The Government concedes the INA's definitions of *admission* and *application for admission* do not "suggest[] that an adjustment may be considered an admission . . . ." In the context of the entire INA, though, the Government argues the use of *admission* in Section 1182(a)(7)(A) is ambiguous. As the Government puts it: "Evidence of ambiguity arises in light of the role adjustment of status plays within the overall statutory scheme." We agree that any understanding of specific statutory provisions requires that we look not just at the specific words but also the context:

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning — or ambiguity — of certain words or phrases may only become evident when placed in context.

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).

We are urged to press on beyond the seemingly clear language of the statute into the ambiguity created by the overall operation of the INA. The possibility of venturing beyond the confines of Sections 1227(a)(1)(A) and 1182(a)(7)(A) causes us to recall comments by Chief Judge Irving R. Kaufman of the Second Circuit, who noted the INA's "striking resemblance" to "King Minos's labyrinth in ancient Crete." *See Rickey v. United States*, 592 F.2d 1251, 1256 n.5 (5th Cir. 1979) (quoting *Lok v. INS*, 548 F.2d 37, 38 (2d Cir. 1977)). With the wariness that comes from prior encounters with the labyrinth, we press on to that dark and mysterious realm.

14

No. 14-60065

Part of the relevant context comes from understanding the background of the concept of adjustment of status. Once upon a time, anyone who wanted to become an "immigrant" and not just a temporary visitor had

> to obtain an immigrant visa at a U.S. embassy or consulate abroad [usually in their home country] and then travel to the United States and seek admission as lawful permanent residents. As such, these laws provided no legal procedure by which a foreign national already physically present in the United States could become a permanent resident without first leaving the country to obtain the required immigrant visa.

7 U.S. CITIZENSHIP & IMMIGRATION SERVS., USCIS POLICY MANUAL, pt. A, ch. 1, § B.1 (2016). Obtaining a visa in that way is called "consular processing." *Id.* n.2. Then, for just under two decades prior to the adjustment of status procedure being created, nonimmigrants could travel to Canada to apply at a consulate there. *Id.* The need to leave at all for this purpose ended with the 1952 INA. *Id.* § B.2. Now, an alien who did not initially enter as an immigrant could become an LPR through the adjustment of status procedure and did not need a new admission or an immigrant visa. *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 245, 66 Stat. 163, 217 (1952) (codified as amended at 8 U.S.C. § 1255). Generally, an adjustment of status is sought by someone like Marques who was admitted on a nonimmigrant visa.[2]

The Government's argument that an adjustment is the equivalent of a new *admission* implicitly draws from this background. Using this history as context, the strongest statutory support for allowing an adjustment of status to be an *application for admission* is that once the application is approved, "the Attorney General shall record the alien's lawful admission for permanent

---

[2] Adjustment of status is available even for some who entered without inspection. *See, e.g.*, 8 U.S.C. § 1255(i). It is also possible for an alien to adjust in the opposite direction, i.e., from the status of an immigrant to that of a nonimmigrant. *Id.* §1257.

15

residence as of the date the order . . . approving the application for the adjustment of status is made . . . ."  8 U.S.C. § 1255(b).

Thus, the nonimmigrant's application for an adjustment of status is an application for what will be recorded as an admission for permanent residence. Congress avoided using the articulation that a resident nonimmigrant simply *became* a resident immigrant.  Instead, the nonimmigrant is to be admitted again as an immigrant, even if the admission is by a record entry and not by a physical entry.  Perhaps through the artificiality of deeming that a person whose status has been adjusted is admitted as an immigrant as of that date, Congress was assuring that all ramifications of being present after lawful admission in that status will apply, and those of being present without a lawful admission will not apply.

Though the BIA's interpretation has considerable promise, we hesitate to give *Chevron* deference.  We hesitate because there has been much judicial wrestling with a closely related argument.  The BIA lost every round and finally conceded the match.  We will discuss those cases next, then determine how that caselaw applies here.  Our purpose is to explore whether accepting the Government's reading creates unacceptable tension with the caselaw regarding another provision.

III.    *Waivers under Section 1182(h)*

The related section of the INA that has been the subject of much judicial attention is Section 1182(h).  It is a later part of the same section we have been discussing dealing with which aliens are inadmissible.  Section 1182(h) governs the Attorney General's discretion to waive inadmissibility for select classes of aliens.  The relevant portion provides a limit to the Attorney General's discretion:

> No waiver shall be granted under this subsection in the case of an alien *who has previously been admitted to the United States as an alien lawfully admitted for permanent residence* if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . .

8 U.S.C. § 1182(h) (emphasis added).  In a series of cases, aliens subject to removal argued this waiver bar applied only to those aliens who entered the United States as an LPR, *not* those aliens who adjusted their status post-entry. The Government argued that the prohibition on waivers also applied to aliens who had an adjustment of status to that of an LPR.

Nearly every circuit to address this issue agreed with the LPRs who had adjusted their status.[3]  *See, e.g.*, *Martinez*, 519 F.3d at 546; *see also J-H-J-*, 26 I. & N. Dec. 563, 564 (B.I.A. 2015) (collecting cases).  The BIA, recognizing "overwhelming circuit court authority" opposing its view, recently withdrew its own caselaw holding otherwise.  *J-H-J-*, 26 I. & N. Dec. at 564.

We addressed the Section 1182(h) issue in a case in which the petitioner had been convicted of bank fraud.  *Martinez*, 519 F.3d at 536.  Martinez's conviction triggered removal proceedings, during which the IJ categorized the conviction as an aggravated felony and held Martinez to be barred from a waiver under Section 1182(h).  *Id.* at 536–37.  In his petition for review, Martinez argued the waiver bar did not apply because he had not "previously been *admitted*" as an LPR.  *Id.* at 541–42.  Rather, Martinez's status was adjusted ten years after his admission, making him eligible for discretionary waiver under Section 1182(h).  *Id.* at 542.  The Government urged that we interpret the term *admission* to include adjustment of status.  *Id.*

Relying on the INA's definition of *admission* and *admitted* in Section 1101(a)(13)(A), we held "'admission' is the lawful *entry* of an alien after

---

[3] One Circuit disagreed: *Roberts v. Holder*, 745 F.3d 928, 931–33 (8th Cir. 2014).

inspection, something quite different, obviously, from post-entry adjustment of status, as done by Martinez." *Id.* at 544. The Section 1182(h) bar applies only "when the alien is granted permission, after inspection, to enter the United States, [and then is] admitted as an LPR." *Id.* We found further support for this interpretation in the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *Id.*

The Government argued that the interpretation we adopted would frustrate the purpose of Section 1182(h) by making an inexplicable distinction between those who enter as LPRs and those who adjust their status post-entry. *Id.* We disagreed. Finding plausible explanations for a distinction, we held "we are not at liberty to override the plain, unambiguous text of" Sections 1182(h) and 1101(a)(13)(A). *Id.* at 545.

The opinion also dealt with the language we have previously discussed here from Section 1255(b), *id.* at 545–46, which provides that after an adjustment of status, the Attorney General will record the effect of that adjustment as a "lawful admission for permanent residence as of the date" of the adjustment, 8 U.S.C. § 1255(b). The court referred to the statutory definition of *lawfully admitted for permanent residence. Martinez*, 519 F.3d at 546. It means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). We held that this definition had a distinct and limited purpose separate from the general concept of being *admitted. See Martinez*, 519 F.3d at 545–46. Thus, the plain language of Section 1182(h)'s waiver bar, which requires that an alien be previously *admitted* as an LPR, was inapplicable to aliens who adjusted status post-entry.

In the present case, the interpretation we are to make is in a different context than that of *Martinez,* as the Government urges us to remember.

Section 1182(a)(7) is the statute we consider, and it was not discussed in *Martinez*.  Our issue is whether applying for relief — adjustment of status — that leads to an alien being *lawfully admitted for permanent residence* can be equated to an *application for admission.*  Is there enough in the ambiguities of the statutory context to allow us to give deference to the BIA's interpretation in this slightly different context and regarding slightly different terms than in *Martinez*?  We conclude there is not.  The circuits have been nearly unanimous that in the Section 1182(h) context, we will not equate the process of being *admitted* as an LPR, as defined in the statute, to the process of an adjustment of status to an LPR.  Because the BIA first was rebuffed by the courts of appeals in its effort to have an adjustment considered an admission for purposes of Section 1182(h), and then conceded the point in its own adjudications, the BIA has now an extremely high hurdle to convince this court that a similarly worded provision elsewhere should receive a different interpretation.

Indeed, Congress has shown it knows the adjustment-of-status phrase and can use it when it wants.  For example, Section 1182(a)(1)(A)(ii) makes removable any alien "who seeks admission as an immigrant, or who seeks adjustment of status to the status of an alien lawfully admitted for permanent residence . . . ."  Section 1182(a)(2)(D) applies to aliens who engaged in prostitution "within 10 years of the date of application for a visa, admission, or adjustment of status . . . ."  Section 1182(a)(4)(A) applies to any alien who "at the time of application for admission or adjustment of status[] is likely at any time to become a public charge . . . ."

"[W]e 'generally presume' that, '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, . . . Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"  *Rodriguez-Avalos v. Holder*, 788 F.3d 444, 451 (5th Cir. 2015) (second alteration in original) (quoting *Brown v. Gardner*, 513 U.S. 115, 120

(1994)). Section 1182(a)(7)(A)'s omission of adjustment of status gives some support to Congress's not intending its documentation requirements to apply to aliens seeking post-entry adjustment of status.

Though Section 1182(a)(7) has not gotten the attention that Section 1182(h) has, another circuit court recently concluded that Section 1182(a)(7) "only applies to applicants for admission and not to immigrants . . . who sought post-entry adjustment of status while already in the United States." *Ortiz-Bouchet v. U.S. Attorney Gen.*, 714 F.3d 1353, 1356 (11th Cir. 2013). For the reasons discussed, we agree with the Eleventh Circuit.

Before finishing our review, we discuss an authority not briefed by the parties. We are analyzing an issue of law, which allows for *de novo* review. Still, we are wary of venturing into the INA and its regulations without some guidance, so our purpose is only to highlight a possibly relevant regulation.

## IV.     *8 C.F.R. § 245.4*

In a Federal Rule of Appellate Procedure 28(j) letter, Marques referred to 8 C.F.R. § 245.4 but, consistent with that rule, did not meaningfully brief its effect. That regulation states:

> The provisions of part 211 of this chapter relating to the documentary requirements for immigrants shall not apply to an applicant under this part.

8 C.F.R. § 245.4. Section 245 of the regulations as well as of the INA concern adjustment of status. The Government filed no response on this point.

Marques's Rule 28(j) letter also referred to one of our decisions in which we held that adjustment of status resulted in the applicant's being "assimilated to the position of an applicant for entry and, therefore, [the alien] must comply with *all but the documentary requirements for entry*." *Pei-Chi Tien v. INS*, 638 F.2d 1324, 1326 (5th Cir. Unit A Mar. 1981) (emphasis added) (citation omitted) (citing 8 C.F.R. § 245.5, now § 245.4).

No. 14-60065

This regulation is not of recent vintage. Though it was not in the original set of regulations for the INA promulgated in December 1952, Immigration and Nationality Regulations, 17 Fed. Reg. 11469, 11518 (Dec. 19, 1952), what is now Section 245.4 first appeared with almost that exact language in March 1954. Miscellaneous Amendments to the Immigration and Nationality Regulations, 19 Fed. Reg. 1138 (Mar. 2, 1954) (then numbered § 245.2; referred to § 211.1, instead of "part 211" as today).

If Section 245.4 of the regulations removes any requirement that someone engaged in the adjustment of status process have the documents set out in Section 1182(a)(7), that would moot the need to resolve whether an adjustment of status is an application for admission under that section. Thus, we mention 8 C.F.R. § 245.4 so that it might be addressed, if necessary, in the future. We do not rely on it in our decision in this petition for review.

*V.    Conclusion*

We hold that Sections 1227(a)(1)(A) and 1182(a)(7)(A) are not ambiguous as to the issue before us. Specifically, the documentation requirements of Section 1182(a)(7) do not apply to an alien who was previously validly admitted as a nonimmigrant, who is residing in the United States, and who applies for an adjustment of status.[4]

The BIA found that Marques adjusted his status on the basis of a fraudulent marriage. It appears the Government had other alternatives to remove Marques due to his fraudulent marriage. We are simply announcing the failure of the only charge on which his removal is based.

---

[4] The Government argues that this conclusion, if extended to every provision in the INA, would create absurd results. We find ourselves bound by the reasoning of *Martinez*, which as we have noted here also faced arguments about absurd consequences. The ramifications of this opinion can be addressed if they arise in subsequent cases.

No. 14-60065

Marques's petition for review of the BIA's order of removal is GRANTED. The BIA's judgment is VACATED.  Marques's petition for review of the BIA's decision denying a motion to reopen is DENIED as MOOT.