# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 17-60849

———————

OKUBOTIN MICHAEL KIA,

     Petitioner

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

     Respondent

———————

Petition for Review of an Order of
the Board of Immigration Appeals

BIA No. A208 257 951

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2019

Lyle W. Cayce
Clerk

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

     Petitioner Okubotin Michael Kia seeks review of an order of the Board of Immigration Appeals affirming the Immigration Judge's denial of Kia's claims for asylum, withholding of removal under the Immigration and Nationality Act, and protection under the Convention Against Torture. The petition for review is denied.

———————

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60849

## I.

Okubotin Michael Kia, a native and citizen of Nigeria, entered the United States in July 2014 on a temporary nonimmigrant visitor visa. He reentered in February 2015 on a temporary nonimmigrant business visitor visa. In September 2015, he attempted to enter once more with his unexpired business visitor visa. Border agents suspected that he intended to immigrate, so he was referred for further inspection at the border.

Upon questioning, Kia expressed a fear of returning to Nigeria. The Department of Homeland Security ("DHS") accordingly conducted a credible fear proceeding. The asylum officer found Kia had expressed a credible fear of persecution on the basis of his political opinion. DHS then issued a Notice to Appear charging Kia with deportability because he lacked a valid entry document.

Although Kia admitted his Nigerian citizenship and his September 2015 application for admission to the United States, he denied the charge that he lacked a valid entry document, since he had a valid multiple-entry visa. He argued that he was admitted when an officer scanned his visa, and thereafter he was not an arriving alien. At a hearing, the immigration judge ("IJ") took testimony from two of the four border control officers with whom Kia said he interacted at the border. After the testimony, the IJ concluded:

> From what I've heard today and from what has been presented, the documentary evidence, my finding is that you were not admitted, sir. You were in fact an arriving alien, and you asked for credible fear.

Kia filed an application for asylum, withholding of removal, or Convention Against Torture ("CAT") relief. Kia, at the time represented by counsel, testified at two hearings before the IJ. According to Kia, his wife is a reporter for a Nigerian television station and his father, sister, and mother are

or were politically active in Nigeria. A second source of Kia's fear, he stated, stemmed from information he leaked to a newspaper editor concerning corrupt practices in Rivers State, his home state in Nigeria.

According to Kia, the former governor of Rivers State, Peter Odili, and his commissioner of finance, Kenneth Kobani, became aware of Kia's involvement in the leaks and, because of that activity and Kia's late father's political activity, "were irked and eager to get rid of me by all means possible." Kia stated that Odili was affiliated with violent gangs and involved in corruption. Further, Kia stated that he and his brother were threatened outside a restaurant by a group of men he believed were connected to a gang leader named Ateke Tom. The restaurant owner told Kia that the men worked for Tom, but Kia had no personal knowledge of this affiliation. Later, Kia's brother was killed; Kia believes the perpetrators to be associated with Tom and Odili. According to Kia, the same car from the restaurant incident was seen at the scene of his brother's shooting, but he lacked personal knowledge regarding the car or the shooters. Kia further testified that he also began receiving threatening phone calls, but he did not know who placed them. Kia also claimed that, in 2009, a friend learned of a plan to attack Kia and warned Kia. Despite the rise to power of Kobani and Tom toward the end of Kia's time in Nigeria, Kia conceded that his wife and children, who were then living in Nigeria, had not been threatened. Moreover, Kia admitted that he lived in various areas in Nigeria for years without being harassed or threatened.

After the hearings, the IJ found Kia to be credible, but determined that Kia had not suffered past persecution on a protected ground, that he had not demonstrated a well-founded fear of future persecution on a protected ground, and that he had failed to show that he could not internally relocate within Nigeria to address his safety concerns. On those grounds, the IJ denied Kia

asylum and withholding of removal. Additionally, the IJ found that Kia had failed to show that he had been tortured in the past, that he had ever been directly harmed by the Nigerian government or a party acting on behalf of the government, and that he was unable to live elsewhere to avoid the possibility of future torture. Based on these conclusions, the IJ denied Kia CAT relief.

Kia appealed pro se, challenging the voluntariness of documents he signed upon his reentry in September 2015, his counsel's performance, and the IJ's conclusion that he was inadmissible. The BIA remanded the matter to the IJ for further factual findings regarding Kia's claim that he was coerced into signing documents relating to his admission and documents resulting in cancellation of his valid visa. Additionally, the BIA directed the IJ to "address why the respondent's visa, which did not expire until June 29, 2016, was not sufficient to establish that the respondent had a valid document to enter or remain lawfully in the United States on September 5, 2015."

On remand from the BIA, Kia was again denied relief. The IJ incorporated both the prior evidence on record and her prior decision in the matter, adding findings and analysis on the two issues delineated in the BIA's remand. The IJ found the testimony of the border officers credible and found they followed the standard practices of Customs and Border Protection ("CBP"). The IJ found once again that Kia was inadmissible, concluding that his conduct and statements made clear that he was an intended immigrant. Likewise, the IJ again determined that Kia was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he did not possess valid documentation permitting him entry. The IJ again denied Kia's application for asylum, withholding of removal, and relief under CAT, and ordered him removed to Nigeria.

Kia also sought to compel production of numerous documents or to subpoena certain witnesses. In denying this motion, the IJ concluded that the

evidence presented at the hearing on remand was sufficient to "establish[] [Kia's] alienage, removability, and treatment." Because Kia's requested evidence was otherwise available—either publicly or, as Kia had twice done successfully, via Freedom of Information Act ("FOIA") requests—the IJ concluded that Kia's motion to compel production of the documents or to subpoena individuals was unexhausted or, alternatively, premature. The IJ also found that the documents Kia sought were unrelated to the scope of the BIA remand and that Kia failed to explain the materiality of documents he sought from August 2015.

Kia appealed the IJ's decisions on remand. He argued that the IJ was biased against him, that the IJ failed to make the findings of fact required by the remand, and that the IJ violated his statutory and constitutional due process rights. He also claimed that the IJ applied the incorrect legal standards in denying his applications for asylum, withholding of removal, and CAT relief.

The BIA dismissed the appeal, finding no clear error in the IJ's factfinding on remand. While acknowledging Kia's contention that the other two officers he interacted with should have testified and been made available for cross-examination, the BIA noted that the IJ credited the testimony of the two officers who did testify and the documentary evidence that supported their testimony. The BIA concluded that the IJ's finding that the CBP officers complied with standard procedures was not clearly erroneous and, further, that no evidence showed that agents coerced Kia's statements.

The BIA also affirmed the IJ's denial of asylum. The BIA found that the IJ properly recognized Kia's lack of firsthand knowledge regarding the perpetrators of his various harms and "correctly concluded that the threatening phone calls did not constitute persecution, even considered in the aggregate with all other evidence." The BIA likewise affirmed the IJ's

conclusion that Kia did not show a well-founded fear of future persecution because certain of the former aggressors were no longer in power and because Kia had lived unharmed for five years in the capital city of Nigeria. As to Kia's request for protection under CAT, the BIA agreed that Kia failed to show he had been tortured in the past, directly harmed by the Nigerian government, or faced a probability of future torture. The BIA rejected Kia's allegation that the IJ was biased against him on remand.

The BIA also rejected Kia's claim of ineffective assistance. First, as to Kia's assertion that counsel failed to obtain the testimony of the two non-testifying border officers, the BIA determined that the IJ properly rejected Kia's effort to obtain this testimony while proceeding pro se. Second, the BIA found counsel made a tactical decision in choosing not to introduce all the evidence Kia wished to submit.

The BIA construed the numerous documents Kia appended to his appeal as a motion for remand and denied the motion. Exhibit A consisted of documentation related to Kia's bond proceedings, which the BIA determined was not relevant to his separate removal proceedings. Exhibit B contained evidence regarding immigration enforcement generally, which was either dated before Kia's final hearing or not material. Exhibit C consisted of documentation of "recent developments in Nigeria, including evidence that certain ethnic groups have been threatened to leave certain regions" in Nigeria, which Kia failed to demonstrate were material to his personal claim. Kia timely petitioned this court for review.

## II.

On a petition for review of an order of the BIA, we review questions of law de novo and findings of fact for substantial evidence.[1] Thus, factual findings are accepted unless "the evidence was so compelling that no reasonable factfinder could conclude against it."[2] Additionally, "a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law . . . ."[3]

## III.

### A.

Kia, proceeding pro se, argues that the BIA erred as a matter of law in failing to address his claim that the IJ, in violation of 8 U.S.C. § 1229a(b)(4)(C), conducted an unrecorded "de facto removal hearing" at his bond hearing on May 23, 2017. Kia, however, failed to exhaust his administrative remedies on this claim. "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA."[4] Where an alien fails to exhaust a claim, this Court is jurisdictionally barred from considering it.[5] In Kia's brief before the BIA, he argued that the IJ's comments at the bond hearing showed she had prejudged the case; the BIA rejected this argument, noting no antagonism by the IJ in the record. Kia advanced no discernible argument about the hearing being unrecorded, and thus this argument was waived.

---

[1] *Milat v. Holder*, 755 F.3d 354, 359 (5th Cir. 2014).

[2] *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009); *see* 8 U.S.C. § 1252(b)(4)(B).

[3] 8 U.S.C. § 1252(b)(4)(C).

[4] *Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004) (quoting *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001)).

[5] *See* 8 U.S.C. § 1252(d)(1); *Omari v. Holder*, 562 F.3d 314, 320–21 (5th Cir. 2009) (holding that claims must first be presented to the BIA or they are not administratively exhausted and are jurisdictionally barred).

**B.**

Kia additionally challenges the BIA's alleged failure to address the violation by DHS of a "plethora" of regulations prior to and during the removal hearings. In his brief before this Court, however, he only lists the assertions of regulatory violations as presented in various paragraphs of his notice of appeal from the IJ's decision. In simply referencing the alleged violations without briefing any argument, Kia has waived the challenges.[6]

**C.**

Kia fails to show that the BIA abused its discretion when it construed his motion to submit new documents as a motion for remand and denied the motion.[7] Kia argues that the BIA failed to address Kia's inability to offer the IJ new evidence that the agents violated his confidentiality, which he discovered through FOIA requests. Kia raised these arguments before the BIA, and contrary to Kia's contention, the BIA explicitly considered and rejected them.

The BIA properly construed Kia's submission of evidence as a motion for remand and analyzed the motion under the standard applied to a motion to reopen. We have previously considered an effort to submit new evidence as a motion to reconsider and reopen.[8] "[T]he requirements for a motion to remand are for all practical purposes the same as those for a motion to reopen."[9] We

---

[6] *See Chambers v. Mukasey*, 520 F.3d 445, 448 n.1 (5th Cir. 2008) (citing *Calif. Gas Transport, Inc., v. N.L.R.B.*, 507 F.3d 847, 853 n.3 (5th Cir. 2007) ("[A] petitioner does not preserve an issue merely by mentioning it . . . .")).

[7] *See Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir. 2005); *de Morales v. INS*, 116 F.3d 145, 147 (5th Cir. 1997).

[8] *Zavala-Rios v. Holder*, 482 F. App'x 935, 936 (5th Cir. 2012) (unpublished).

[9] *Matter of Ige*, 20 I. & N. Dec. 880, 884 (BIA 1994); *see Chun v. Gonzales*, 161 F. App'x 379, 381 (5th Cir. 2006) (unpublished) (stating that the requirements for a motion to remand are the same as for a motion to reopen); *see also* 8 C.F.R. § 1003.2(c)(4) (indicating that the

review the denial of a motion to remand or a motion to reopen for abuse of discretion.[10]

As the BIA stated, the relevant regulation requires that "[a] motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."[11] Moreover, the BIA has discretion to deny a motion to reopen if it is not satisfied that the new evidence "would likely change the result of the case."[12] Kia states that he was diligent in trying to obtain the evidence and press his FOIA requests, but his vague and conclusory assertions are insufficient to show that the BIA abused its discretion when it found that each group of documents submitted by Kia was previously discoverable, immaterial, or unlikely to have changed the result of the proceedings.[13]

**D.**

Kia next contends that the BIA clearly erred in interpreting the plain language of § 1182(a)(7)(A)(i)(I), under which he was charged with inadmissibility. Section 1182(a)(7)(A)(i)(I) provides that an immigrant is ineligible for admission if he does not possess "a valid unexpired immigrant visa," among other documents.[14] Kia claims he could not have been ineligible

---

BIA may treat motions to reopen as motions to remand for IJ decisions that are pending when an appeal is filed or that are filed while an appeal before the BIA is pending).

[10] *Chun*, 161 F. App'x at 381; *see de Morales*, 116 F.3d at 147.

[11] 8 U.S.C. § 1003.2(c)(1); *Luna-Garcia De Garcia v. Barr*, 921 F.3d 559, 566 (5th Cir. 2019).

[12] *Htwe v. Holder*, 355 F. App'x 812, 815 (5th Cir. 2009) (unpublished) (quoting *In the Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992)).

[13] *See Townsend v. INS*, 799 F.2d 179, 182 (5th Cir. 1986) (finding Townsend's "conclusory statement that he had sufficiently established his well founded fear of persecution according to present case law" inadequate to show that the BIA abused its discretion in dismissing an appeal (internal quotation marks omitted)).

[14] 8 U.S.C. § 1182(a)(7)(A)(i)(I).

for admission because, at the time, he had a valid, unexpired B1/B2 nonimmigrant visa.

Every alien, with certain exceptions not relevant here, "shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 1101(a)(15) of this title."[15] Kia bore the burden to demonstrate that he was "clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title."[16]

This Court generally reviews only the BIA's decision, not the IJ's, "unless the IJ's decision has some impact on the BIA's decision."[17] On this point, the BIA "agree[d] with the rationale" of the IJ but also supplied its own reasoning. As a result, we review only the BIA's decision.[18] The BIA found that Kia applied for admission with his B1/B2 nonimmigrant visa and "expressed his intent to earn money in the United States and [his] fear of returning to Nigeria." Moreover, the BIA noted that Kia did not at that time contest these facts or that he was applying for asylum. In light of this evidence, the BIA concluded that the IJ correctly determined that Kia was inadmissible under § 1182(a)(7)(A)(i)(I). As the Attorney General notes, Kia told an interviewing officer that he was residing in Oklahoma and working—which meant he could not be classified as a B1/B2 nonimmigrant—and that he feared returning to

---

[15] 8 U.S.C. § 1184(b).

[16] 8 U.S.C. § 1229a(c)(2)(A).

[17] *Wang*, 569 F.3d at 536.

[18] *See Marques v. Lynch*, 834 F.3d 549, 552–53 (5th Cir. 2016) (reviewing only the BIA decision where the BIA "adopt[ed] and affirm[ed]" the IJ's decision but offered its own rationale); *see also Majd v. Gonzales*, 446 F.3d 590, 594 (5th Cir. 2006) (noting that although we generally review only the decision of the BIA, we will review the IJ's decision when "the BIA summarily affirms the IJ's decision without opinion").

Nigeria—which meant he intended to abandon his residence in Nigeria. On these facts—crediting the officer's testimony and documentary evidence and recognizing Kia's burden, as the IJ did—the BIA's affirmance was not manifestly contrary to law.[19]

## E.

Kia additionally asserts that the BIA failed to apply the correct standard to his claims of ineffective assistance of counsel. Kia has no Sixth Amendment right to counsel, which is limited to criminal prosecutions.[20] Nonetheless, "this circuit has suggested that there may be a right to meaningful assistance of counsel grounded in the [F]ifth [A]mendment guarantee of due process."[21] In reviewing such a due process-based claim, this court has applied the standard enunciated in *Strickland v. Washington*[22] to determine if the alien alleged "sufficient facts to allow this court to infer that competent counsel would have acted otherwise."[23]

The BIA based the analysis of Kia's claims on *Strickland*,[24] requiring that Kia demonstrate both deficient performance and prejudice. To the extent Kia was entitled to effective assistance of counsel under the Fifth Amendment, Kia has demonstrated no error in the standard applied by the BIA.[25]

Nor has Kia shown that the BIA overlooked certain bases of his claim. Kia contends that the BIA failed to address his claims that counsel failed to communicate with Kia, that counsel failed to present all relevant evidence, and that counsel failed to "conduct a reasonable and competent inquiry." However,

---

[19] *See* 8 U.S.C. § 1252(b)(4)(C).

[20] *Mantell v. INS*, 798 F.2d 124, 127 (5th Cir. 1986).

[21] *Id.* (citing *Paul v. INS*, 521 F.2d 194, 197 (5th Cir. 1975)).

[22] 466 U.S. 668, 687 (1984).

[23] *Mantell*, 798 F.2d at 127 (quoting *Paul*, 521 F.2d at 199).

[24] 466 U.S. at 687.

[25] *See Milat*, 755 F.3d at 359.

Kia makes only generalized assertions of counsel's failings and conclusory contentions regarding the resulting prejudice.

In rejecting these claims, the BIA found that counsel had "wide latitude to make tactical decisions" and the evidence, in any event, did not "materially affect [Kia's] personal claim for relief from removal, which is premised on certain specific individuals who would harm him." Kia's factual assertions regarding counsel's conduct are too vague to compel a conclusion different than that reached by the BIA, as is his conclusory assertion that, had counsel performed as Kia wished, Kia would have obtained a different result.[26]

## F.

Next, Kia argues that the BIA erred as a matter of law in affirming the IJ decision that Kia failed to show past persecution and a well-founded fear of future persecution, as required for asylum and withholding of removal. Kia contends that the BIA's failure to "discuss or even mention the relevant substantive evidence" shows that the agency failed to accord his claims "meaningful consideration." Kia also challenges the denial of CAT relief.

## 1.

The Attorney General has the discretion to grant asylum to refugees.[27] A person qualifies as a refugee if he (1) is outside of his country and is unable or unwilling to return to that country because of past persecution or a well-founded fear of future persecution and (2) demonstrates that his "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for the persecution."[28]

---

[26] *See Wang*, 569 F.3d at 537.

[27] 8 U.S.C. § 1158(b)(1); *Milat*, 755 F.3d at 360.

[28] *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012) (internal quotation marks and citation omitted).

To prevail on a claim of past persecution, an alien must establish that he suffered persecution at the hands of the "government or forces that a government is unable or unwilling to control."[29] A showing of past persecution on account of an enumerated ground sets up a rebuttable presumption of a well-founded fear of future persecution.[30] However, an applicant not entitled to the presumption must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution."[31] The alien has the burden of showing "some particularized connection" between the feared persecution and one of the five protected grounds.[32]

"The standard for obtaining withholding of removal is even higher than the standard for asylum, requiring a showing that it is more likely than not that the alien's life or freedom would be threatened by persecution" based on a protected ground.[33] Therefore, an applicant who is unable to show eligibility for asylum "is necessarily also unable to establish an entitlement to withholding of removal."[34]

In reviewing Kia's claims, the BIA agreed with the IJ that Kia failed to show past persecution based on Kia's "cumulative experiences," which included "the confrontation outside the restaurant, the threatening phone calls, and the 2009 warning that he would be attacked." As to these incidents, the BIA found that the IJ "properly noted that the respondent had no first-hand knowledge regarding who the men outside the restaurant were . . . . [T]he Immigration

---

[29] *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006).

[30] 8 C.F.R. § 208.13(b)(1).

[31] *Orellana-Monson*, 685 F.3d at 518 (emphasis omitted) (internal quotation marks and citation omitted).

[32] *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994).

[33] *Orellana-Monson*, 685 F.3d at 518.

[34] *Dayo v. Holder*, 687 F.3d 653, 658–59 (5th Cir. 2012) (internal quotation marks and citation omitted).

Judge also correctly concluded that the threatening phone calls did not constitute persecution, even considered in the aggregate with all other evidence." Further, the BIA found Kia failed to establish that his brother was killed based on Kia's political opinion and found Kia had no first-hand knowledge of who committed the murder.

Likewise, the BIA agreed with the IJ regarding Kia's fear of future persecution. The BIA noted that one of the politicians Kia exposed had not been in power since 2007. Further, the BIA determined that, while "the current governor employs some of the same people as his corrupt predecessor," Kia introduced insufficient evidence that the current governor had continued the corrupt practices of his predecessor. Therefore, Kia also failed to show that the current governor had the same motivation to harm Kia. The BIA noted that Kia had lived without incident in the capital of Nigeria for five years. Because Kia failed to show past persecution or a well-founded fear of future persecution, the BIA did not consider the IJ's conclusion that Kia could live elsewhere in Nigeria. Since Kia failed to show eligibility for asylum, he also did not meet the higher standard for withholding of removal.

Although past persecution may involve harm other than physical suffering or injury, "such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life,"[35] a showing of past persecution "requires more than a few isolated incidents of verbal harassment or intimidation."[36] In challenging the BIA's decision, Kia does not cite incidents other than those referred to by the

---

[35] *Eduard v. Ashcroft*, 379 F.3d 182, 187 (5th Cir. 2004) (internal quotation omitted).
[36] *Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017) (internal quotation marks and citation omitted).

BIA—specifically, the restaurant incident, the harassing phone calls, his brother's death, and the warning from a friend of threats made against him.

Kia cites no evidence in the record showing more than a possible or presumed connection to Kia's father's political activity or Kia's own whistleblowing activity. As the BIA pointed out, Kia lacked personal knowledge of the perpetrators of the telephone calls, of the individuals or affiliations of the individuals who approached him at the restaurant, and of his brother's killers. Assumptions about the perpetrators' identities do not compel a conclusion that the confrontations, calls, and murder were connected to Kia's or his father's activities.[37] The general country conditions reflected by the reports to which Kia contends the BIA should have referred also do not prove Kia's personal experience of persecution or a nexus between his activities and the persecution.[38] To the extent that the reports Kia submitted discuss Odili, Kobani, and Tom, they do not show that the harassment Kia himself experienced rose to the level of persecution, nor do they show the required link between the individuals, the incidents, and Kia's activities.[39]

As to Kia's assertion that the BIA failed to consider his evidence, the BIA is not required to address every piece of evidence in its decision; here, the decision reflects that the BIA considered the relevant issues.[40] Kia has pointed to no evidence so compelling as to require a conclusion different than that reached by the BIA on his asylum claim.[41] He has also, therefore, failed to show that the evidence compelled a different result as to withholding of removal.[42]

---

[37] *See Zhao*, 404 F.3d at 306.

[38] *See Faddoul*, 37 F.3d at 188 (requiring a specific connection).

[39] *See Morales*, 860 F.3d at 816.

[40] *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996); *Guo Yue Huang v. Holder*, 392 F. App'x 335, 336 (5th Cir. 2010).

[41] *See Zhao*, 404 F.3d at 306.

[42] *See Dayo*, 687 F.3d at 659.

15

**2.**

The standards for CAT relief differ from those for asylum and withholding of removal and require a separate analysis.[43] "To secure relief under CAT, an alien does not need to show persecution based on one of the five protected characteristics for claims of asylum and withholding of removal."[44] Rather, under CAT, an alien must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."[45] The alien must also show that "it is more likely than not he would be tortured by, or with the acquiescence of, government officials acting under the color of law."[46] Such acquiescence occurs when an official "has prior awareness of such activity" but does not intervene.[47] Acquiescence may occur under color of law even in the absence of an official state sanction if an official's conduct "constitutes a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[48]

Kia again avers that the BIA failed to address the country condition reports, the Human Rights Watch reports, and the Amnesty International reports. On that basis, he contends that the BIA failed to perform the required analysis for CAT relief and so committed "legal error." Again, the BIA need not address in detail every assertion, but must consider the issues raised and

---

[43] *See Efe v. Ashcroft*, 293 F.3d 899, 906–07 (5th Cir. 2002).

[44] *Mwembie v. Gonzales*, 443 F.3d 405, 415 (5th Cir. 2006).

[45] 8 C.F.R. § 208.16(c)(2); *see Efe*, 293 F.3d at 907.

[46] *Hakim v. Holder*, 628 F.3d 151, 155 (5th Cir. 2010).

[47] *Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017) (internal quotation marks and citation omitted).

[48] *Garcia v. Holder*, 756 F.3d 885, 891 (5th Cir. 2014).

provide sufficient reasoning for "a reviewing court to perceive that it has heard and thought and not merely reacted."[49]

In this case, the BIA found that the IJ properly denied Kia relief under CAT because Kia failed to show that he had been subject to torture or directly harmed by the Nigerian government based on the incidents he recounted. The BIA again noted Kia's lack of personal knowledge regarding who threatened him and whether those individuals had ties to state actors; it concluded that there was "insufficient evidence that anyone acting under color of law tried to harm [Kia] in the past." Further, the BIA found no clear error in the IJ's "predictive fact finding regarding the probability of future torture and the likelihood of state involvement in that torture." Kia's vague assertions regarding the probative value of certain evidence for his claims show neither that the BIA failed to consider the issues fully and fairly nor that the evidence requires that he be granted relief under CAT.[50]

**IV.**

Kia's petition for review is denied.[51]

---

[49] *Efe*, 293 F.3d at 908 (internal quotation marks and citation omitted); *see Ghotra v. Whitaker*, 912 F.3d 284, 290 (5th Cir. 2019) (requiring "full and fair consideration" but not "an exegesis on every contention" (internal quotation marks and citations omitted)).

[50] *Ghotra*, 912 F.3d at 290; *Efe*, 293 F.3d at 908.

[51] Kia's pending motion for authorization to file his brief before the BIA as his appellate brief in this Court is denied as moot, given that Kia has filed an appellate brief in this Court.