**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 13, 2012

No. 11-60314

Lyle W. Cayce
Clerk

MARIA ANGELICA BANDA NINO,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before STEWART, ELROD, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Maria Angelica Banda Nino petitions for review of the Board of Immigration Appeals' decision that she was ineligible for cancellation of removal. We conclude that Banda's ineligibility depends solely on whether her prior state-court conviction was for a crime involving moral turpitude. It was. We therefore DENY her petition.

FACTUAL AND PROCEDURAL BACKGROUND

Banda, a native and citizen of Mexico, entered the United States in March 1999 as a nonimmigrant. She had authorization to remain for a temporary period, not to exceed six months, but she remained beyond that period without

No. 11-60314

authorization.  In November 2007, she was convicted of unlawful possession of fraudulent identifying information pursuant to Texas Penal Code § 32.51.

The Department of Homeland Security then filed a notice for her to appear, charging Banda with removability as an alien who remained in the United States for a time longer than permitted.  *See* 8 U.S.C. § 1227(a)(1)(B). Banda, represented by counsel, appeared before an immigration judge (IJ) and conceded removability as charged.  She subsequently filed an application for cancellation of removal for nonpermanent residents pursuant to 8 U.S.C. § 1229b(b)(1).  The IJ concluded that Banda's Texas conviction was for a crime involving moral turpitude, and she was therefore ineligible for cancellation of removal.  *See* 8 U.S.C. § 1227(a)(2).  Banda filed an appeal, which the Board of Immigration Appeals (BIA) dismissed.  Banda filed a timely petition for review.

DISCUSSION

We have jurisdiction to review questions of law in petitions from the BIA. 8 U.S.C. § 1252(a)(2)(D).  Banda contends first that she is eligible for cancellation of removal because her 2007 Texas conviction was not for a crime involving moral turpitude.  Alternatively, she contends she is eligible for cancellation under 8 U.S.C. § 1229b(b)(1)(C) because the crime was committed more than five years after her entry into the United States.  The five-year provision appears in 8 U.S.C. § 1227(a)(2)(A).  How those latter two statutes work together is an issue of first impression in this circuit.

I.    *Crime Involving Moral Turpitude*

    A.    *Background*

The Attorney General may cancel the removal of an alien who is deportable if the alien, among other requirements, "has not been convicted of an offense under section . . . 1227(a)(2) . . . of this title."  8 U.S.C. § 1229b(b)(1)(C).

No. 11-60314

Section 1227(a)(2) relevantly includes any alien who "is convicted of a crime involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(i).

These provisions do not contain a definition of "moral turpitude." The BIA employs the following definition:

> Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.

*Hamdan v. I.N.S.*, 98 F.3d 183, 186 (5th Cir. 1996) (citing BIA precedent).

Our precedents apply a "categorical approach" to determine whether a particular offense is one involving moral turpitude: "An offense is a crime involving moral turpitude if the minimum reading of the statute [of conviction] necessarily reaches only offenses involving moral turpitude." *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006). If the statute of conviction includes offenses not involving moral turpitude, then the statute does not categorically describe a crime involving moral turpitude. *Id.* When the statute is divisible and some parts describe crimes involving moral turpitude and some do not, we apply a modified categorical approach. *Id.* Under that analysis, we examine the alien's record of conviction to determine whether she was convicted under a part that describes a crime involving moral turpitude. *Id.*

An analytical path which strays somewhat from what we just described has been established by the Attorney General. *See Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008). First, the adjudicator is to ask whether "moral turpitude necessarily inheres in all cases that have a realistic probability of being prosecuted" under the statute. *Id.* at 696. "[I]f the language of the

3

No. 11-60314

criminal statute could encompass both conduct that involves moral turpitude and conduct that does not, *and* there is a case in which the relevant criminal statute has been applied to the latter category of conduct, the adjudicator cannot categorically treat all convictions under that statute as convictions for crimes that involve moral turpitude." *Id.* In such situations, the next step under *Silva-Trevino* would permit the adjudicator to proceed beyond the record of conviction: "immigration judges should be permitted to consider evidence beyond that record if doing so is necessary and appropriate to ensure proper application of the Act's moral turpitude provisions." *Id.* at 699.

In this case, the BIA determined that Banda's conviction was for a crime involving moral turpitude. At the time of Banda's conviction, the statute of conviction provided: "A person commits an offense if the person obtains, possesses, transfers, or uses identifying information of another person without the other person's consent and with intent to harm or defraud another." Tex. Penal Code § 32.51(b) (2007). The BIA applied *Silva-Trevino* and concluded that "appropriating another's identifying information with the specific intent either to harm or to defraud another is inherently reprehensible conduct, committed with sufficient scienter to qualify it as a categorical" crime involving moral turpitude, and that Banda had not shown a "realistic probability" that Section 32.51 would apply to non-morally turpitudinous conduct.

We now review whether this conviction was properly categorized.

*B.    Application of Standards*

We review *de novo* whether a statute is a crime of moral turpitude. *Smalley v. Ashcroft*, 354 F.3d 332, 336 (5th Cir. 2003). Many of the arguments presented by the parties and *amici* concern the degree of deference owed the Attorney General's opinion in *Silva-Trevino*. As we deem Banda's offense to be one for moral turpitude under our precedents as well as under *Silva-Trevino*, we need not resolve that dispute here.

No. 11-60314

Banda concedes that a crime involving the intent to defraud is one of moral turpitude.  *See, e.g.*, *Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002).  Her contention is that, because her offense could be committed with either the intent to defraud or the intent to harm, the statute does not include "only offenses involving moral turpitude."  *Amouzadeh*, 467 F.3d at 455.

Banda cites a district court opinion as support for the proposition that an intent to harm is not a sufficiently depraved intent as always to evidence moral turpitude.  *See Hudson v. Bd. of Regents of Tex. S. Univ.*, No. 4:05-CV-03297, 2008 WL 2754622 (S.D. Tex. July 14, 2008).  The relevant part of *Hudson* is not the federal court holding, which dismissed claims under 42 U.S.C. § 1983.  Banda relies on the fact that prior to the federal suit, the *Hudson* plaintiffs were prosecuted under Texas Penal Code Section 32.51(b) for conduct that Banda argues was not morally repugnant.  *See id.* at *7.

We first explain what can be determined about the state prosecution.  The *Hudson* suit was filed by Texas Southern University students who had circulated a flyer containing the salary and Social Security number of a university administrator.  University officials filed a complaining affidavit, and the students were charged under Texas Penal Code Section 32.51(b).  The federal court stated that a state court judge, without a written opinion, dismissed the charge for lack of probable cause to arrest.  *Id.* at *1-2.  Subsequently, the students brought a civil suit for malicious prosecution.  The district court granted the university officials' motion for summary judgment on the ground of qualified immunity, ruling that they were reasonable to believe the students possessed the requisite "intent to harm" under Section 32.51(b).  *Id.* at *7.

The opinion of the federal court in *Hudson* does not demonstrate that a decision was made by the state trial judge about whether Section 32.51(b) would have applied to the students' conduct.  Accepting without deciding, as no state court ever had to decide, that the students' conduct was properly prosecuted

5

under Section 32.51(b), we are not persuaded that the students' charged conduct in *Hudson* did not involve moral turpitude. To the contrary, publicizing a person's private identifying information, such as a Social Security number, easily could be seen as violating "accepted rules of morality and the duties owed between persons." *Hamdan*, 98 F.3d at 186.

As noted, Banda was convicted of "obtain[ing], possess[ing], transfer[ing], or us[ing] identifying information of another person without the other person's consent and *with intent to harm or defraud another*." Tex. Penal Code § 32.51(b) (2007) (emphasis added). Given the statutory requirement of a specific intent "to harm or defraud another," we think "the minimum reading of the statute necessarily reaches only offenses involving moral turpitude." *Amouzadeh*, 467 F.3d at 455. It follows that, were we to apply the *Silva-Trevino* standard, we likewise would agree with the BIA's determination in this case that "moral turpitude necessarily inheres in all cases that have a realistic probability of being prosecuted" under the statute. *Silva-Trevino*, 24 I. & N. Dec. at 697.

The offense is one of moral turpitude under either our categorical analysis or the realistic probability test. We leave undecided whether *Silva-Trevino* is a proper test to use in resolving issues such as this.[1]

## II.    *Eligibility for Cancellation of Removal*

Though we have found the offense to qualify as one involving moral turpitude, we also must decide whether Banda is still entitled to be considered for the relief she seeks. A nonpermanent resident may be eligible for cancellation of removal if she "has not been convicted of an offense under" any of three statutes, including 8 U.S.C. § 1227(a)(2). 8 U.S.C. § 1229b(b)(1)(C).

---

[1] A petition for review of *Silva-Trevino* is pending in this court. *Silva-Trevino v. Holder,* No. 11-60464 (5th Cir. filed July 12, 2011).

No. 11-60314

Section 1227(a)(2) provides this: "Any alien who – (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." The parties dispute whether "under" in Section 1229b(b)(1)(C) references only the crime or refers also to the requirement it be committed within five years after admission. Banda's crime of moral turpitude was committed more than five years after her admission.

The first step in interpreting a statute is to determine whether "Congress has directly spoken to the precise question at issue" such that we must "give effect to the unambiguously expressed intent of Congress" stated in the statute's text. *Tex. Coal. of Cities Util. Issues v. F.C.C.*, 324 F.3d 802, 806-07 (5th Cir. 2003) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)). If an unambiguous answer is not found, we move to the second step of the analysis and defer to the agency entrusted with implementing the statute, if its construction is permissible. *Id.* When deciding the permissibility of the BIA's interpretation, we "consider only whether the decision is arbitrary, capricious, or manifestly contrary to the statute, and may not substitute our own judgment for a reasonable alternative formulated by the BIA." *Khalid v. Holder*, 655 F.3d 363, 367 (5th Cir. 2011) (quotation marks and citation omitted).

The government argues that Section 1229b(b)(1)(C) is unambiguous. The Ninth Circuit has agreed, holding that the statutory language was plain "that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole." *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004). "The most logical reading of 'convicted of an offense under' is that reached by the BIA: 'convicted of an offense described under.'" *Id.* We agree that it is not possible to be convicted *under* the referenced immigration statute as it only refers to categories of offenses that are criminalized by other statutes.

7

No. 11-60314

The government suggests this interpretation is supported by the different manner in which another statute cross-references Section 1227(a)(2). The other statute provides that an alien's continuous residence in this country legally ends for certain purposes "when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." 8 U.S.C. § 1229b(d)(1). This language accomplishes explicitly what Banda argues Section 1229b(b)(1)(C) implies, namely, it provides that the offense must have been committed *and* have rendered the alien inadmissible or removable. According to the government, the failure of Congress to give an explanation in Section 1229b(b)(1)(C) similar to that used in Section 1229b(d)(1) shows the sections do not operate the same.

Banda also finds plain statutory language to support her position. She contends no conviction "under" this section occurs unless a conviction was for a morally turpitudinous crime that was committed within five years of admission with the relevant sentence imposed. Banda relies on a D.C. Circuit definition of "under" in another context to mean "by reason of the authority of." *See St. Louis Fuel & Supply Co. v. F.E.R.C.*, 890 F.2d 446, 450 (D.C. Cir. 1989). She argues that Section 1227(a)(2) provides the authority to deport an alien having committed a crime of moral turpitude within five years and subject to a sentence of at least a year.

Banda's argument is unpersuasive. Section 1227(a)(2) does not provide the authority for the conviction. It provides the authority for the deportation. An alien will never be convicted under any part of Section 1227. All that section provides is a list of the kinds of offenses which bar cancellation of removal.

We conclude that Section 1229b(b)(1)(C), without ambiguity, references Section 1227(a)(2) in order to identify the kinds of offenses that will make an

8

No. 11-60314

alien ineligible for cancellation of removal. For purposes of that ineligibility, it does not matter when the offense occurred in relation to the alien's admission.

Because we determine the statute is unambiguous, we do not engage in the additional *Chevron* analysis relevant for resolving ambiguity.

Petition for review DENIED.