# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60539

JESUS CARDOSO MERCADO,

Petitioner,

v.

LORETTA LYNCH, U.S. ATTORNEY GENERAL,

Respondent.

United States Court of Appeals
Fifth Circuit

**FILED**

May 4, 2016

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, PRADO, and GRAVES, Circuit Judges.

PER CURIAM:

Petitioner Jesus Cardoso Mercado was ordered removed from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) after the Board of Immigration Appeals ("BIA") found that his convictions for indecent exposure and making terroristic threats under Texas law are crimes involving moral turpitude ("CIMT"). Because we hold that the BIA applied the incorrect standard in analyzing whether Petitioner's convictions constitute CIMTs, we reverse and remand.

## I.  FACTUAL BACKGROUND

Petitioner is a Mexican native and citizen who was admitted to the United States as a permanent resident in 1983 and then again as a returning

No. 14-60539

permanent resident in 2007. In August 2007, Petitioner pleaded *nolo contendere* to indecent exposure in violation of Texas Penal Code § 21.08. In May 2010, he pleaded *nolo contendere* to making terroristic threats in violation of Texas Penal Code § 22.07.

In 2013, the Department of Homeland Security ("DHS") notified Petitioner that he was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) and (ii).[1] An Immigration Judge found that Petitioner was removable pursuant to § 1227(a)(2)(A)(ii), which states that an alien may be deported at any time after admission if "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." In March 2014, the Immigration Judge denied Petitioner's request for discretionary cancellation of his removal and ordered that he be removed to Mexico.

The BIA affirmed the Immigration Judge, holding that under the "realistic probability" approach Petitioner's convictions for indecent exposure and making terroristic threats under Texas law are CIMTs.

## II. DISCUSSION

We review questions of law raised in the Petition for Review de novo but give "considerable deference to the BIA's interpretation of the legislative scheme it is entrusted to administer." *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007) (quoting *Fonseca-Leite v. I.N.S.*, 961 F.2d 60, 62 (5th Cir. 1992)). That is, "[w]e give *Chevron* deference to the BIA's interpretation of the term 'moral turpitude' and its guidance on the general categories of offenses which constitute CIMTs, but we review *de novo* the BIA's determination of whether

---

[1] DHS subsequently withdrew the charge under § 1227(a)(2)(A)(i).

No. 14-60539

a particular state or federal crime qualifies as a CIMT." *Esparza-Rodriguez v. Holder*, 699 F.3d 821, 823–24 (5th Cir. 2012).

The BIA applied the realistic probability approach in analyzing whether Petitioner's convictions are CIMTs. Under this approach, "[i]n determining whether a state statute sweeps more broadly than an offense defined under federal law, courts should not 'conceive of every imaginable means by which a statute might possibly be violated.'" *United States v. Rodriguez-Negrete*, 772 F.3d 221, 225 (5th Cir. 2014), *cert. denied,* 135 S. Ct. 1538 (2015) (quoting *United States v. Gore*, 636 F.3d 728, 733 (5th Cir. 2011)). Instead, courts must determine whether there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). This requires a "show[ing] that the statute was so applied in [the petitioner's] own case" or "at least point[ing] to . . . other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193. The BIA concluded that both of Petitioner's convictions included the requisite reprehensible conduct and mental state to be CIMTs, and Petitioner had failed to show a realistic probability that individuals would be prosecuted under these sections for non-reprehensible conduct.

While the BIA[2] and several other circuits[3] have adopted this approach in the context of analyzing whether convictions constitute CIMTs under the

---

[2] *See Matter of Hernandez*, 26 I. & N. Dec. 397, 398 (BIA 2014); *Matter of Medina*, 26 I. & N. Dec. 79, 82 (BIA 2013); *Matter of Louissaint*, 24 I. & N. Dec. 754, 757 (BIA 2009).

[3] *See, e.g.*, *Cano-Oyarzabal v. Holder*, 774 F.3d 914, 916–17 (7th Cir. 2014); *Villatoro v. Holder*, 760 F.3d 872, 877 (8th Cir. 2014); *Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1266 (9th Cir. 2013); *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011). *But see Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 481–82 (3d Cir. 2009) (declining to adopt the realistic probability approach in analyzing CIMTs).

Immigration and Nationality Act ("INA"), this Court has not. *See Cisneros-Guerrerro v. Holder*, 774 F.3d 1056, 1058–59, 1059 n.2 (5th Cir. 2014); *Nino v. Holder*, 690 F.3d 691, 694 (5th Cir. 2012). Rather, we have persistently applied the "minimum reading" approach in this context. *E.g.*, *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006); *Cisneros-Guerrerro*, 774 F.3d at 1058–59; *Nino*, 690 F.3d at 694. Pursuant to this approach, "[a]n offense is a crime involving moral turpitude if the minimum reading of the statute [of conviction] necessarily reaches only offenses involving moral turpitude." *Nino*, 690 F.3d at 694 (second alternation in original) (quoting *Amouzadeh*, 467 F.3d at 455).

The Government argues that this Court should now adopt the realistic probability approach in the CIMT context. However, we are bound by this Circuit's rule of orderliness. Under our rule of orderliness, "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

The Government contends that the Supreme Court's decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), constitutes such an intervening change in law. We disagree. For a Supreme Court decision to satisfy this Court's rule of orderliness, it must "be unequivocal, not a mere 'hint' of how the Court might rule in the future." *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013). *Moncrieffe* addressed whether a conviction was an aggravated felony, not a CIMT. *See* 133 S. Ct. at 1682. And while it stated that courts view the "minimum conduct criminalized by the state statute," *id.* at 1684, in light of the "realistic probability . . . that the State would apply its statute to conduct that falls outside of the generic definition of the crime," *id.* at 1685 (quoting *Duenas-Alvarez*, 549 U.S. at 193), this is not an unequivocal indication that

the Supreme Court intended to extend the realistic probability approach to the CIMT context.

We also find the Government's argument that *Moncrieffe* unequivocally supports extending the realistic probability approach to analyzing CIMTs because it cited two cases involving CIMTs unavailing. The Court cited *Guarino v. Uhl*, 107 F.2d 399 (2d Cir. 1939), and *United States ex rel. Mylius v. Uhl*, 210 F. 860 (2d Cir. 1914), for the proposition that courts look to the conviction offense, not the actual facts, in determining whether the conviction meets a generic crime definition. *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Guarino*, 107 F.2d at 399); *id.* at 1685 (citing *Mylius*, 210 F. at 862). The Supreme Court neither acknowledged that these cases involved CIMTs nor relied on this aspect. *See id.* at 1864–65.

As such, there has not been an intervening change of law that would permit this panel to overturn prior precedent and adopt the realistic probability approach as applied to CIMTs.

## III.  CONCLUSION

Accordingly, we reverse and remand for the BIA to analyze Petitioner's convictions under the minimum reading approach.