**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE GUADALUPE LOZANO-
ARREDONDO,

*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,

*Respondent.*

No. 11-72422

Agency No.
A098-392-551

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 7, 2016
Seattle, Washington

Filed August 8, 2017

Before: William A. Fletcher, Raymond C. Fisher
and N. Randy Smith, Circuit Judges.

Opinion by Judge Fisher

## SUMMARY[*]

### Immigration

The panel granted Lozano-Arredondo's petition for review of the Board of Immigration Appeals' decision concluding he was ineligible for cancellation of removal because his conviction for petit theft in Idaho was a crime involving moral turpitude.

First, the panel held that Lozano-Arredondo's record of conviction is inadequate to determine if he was convicted of a crime involving moral turpitude because the record does not identify any particular statute of conviction, the Idaho petit theft statute is not categorically a crime involving moral turpitude, and the record contained insufficient information to apply the modified categorical approach. The panel noted that the effect of this inconclusive record is unclear due to the open question of whether *Young v. Holder*, 697 F.3d 976, 989 (9th Cir. 2012) (en banc), remains good law after the Supreme Court's decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). However, the panel declined to reach the *Young-Moncrieffe* issue because another panel of this court has priority to address it. Instead – because the panel was remanding on another ground – the panel also remanded the modified categorical approach question to the Board, stating that once the *Young-Moncrieffe* issue is resolved by this court, the Board can apply that law to Lozano-Arredondo's conviction.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Second, the panel remanded to the Board the issue of whether Lozano-Arredondo had been convicted of an "offense under" 8 U.S.C. § 1227(a)(2)(A)(i), which provides that an alien "who is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, . . . for which a sentence of one year or longer may be imposed, is deportable." The panel declined to defer to the Board's published decision in *In re Cortez Canales*, 25 I. & N. Dec. 301 (BIA 2010), which held that § 1227(a)(2)(A)(i) applies regardless of when the offense was committed, and is not limited to offenses committed within five years of admission. The panel remanded for the Board to reconsider its interpretation of the phrase "offense under" in the cancellation of removal statute.

---

## COUNSEL

Maria Elena Andrade (argued) and Nathaniel J. Damren, Andrade Legal, Boise, Idaho, for Petitioner.

Gregory A. Pennington, Jr. (argued) and Kathryn M. McKinney, Trial Attorneys; Anh-Thu P. Mai-Windle and Kiley Kane, Senior Litigation Counsel; Joyce R. Branda, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

---

**OPINION**

FISHER, Circuit Judge:

Jose Guadalupe Lozano-Arredondo was denied cancellation of removal based on his conviction for petit theft in the State of Idaho. The Board of Immigration Appeals (BIA) concluded he was ineligible for cancellation because this conviction qualified as an "offense under" 8 U.S.C. § 1227(a)(2). That provision says any alien who "is convicted of [1] a crime involving moral turpitude [2] committed within five years . . . after the date of admission, and . . . [3] for which a sentence of one year or longer may be imposed, is deportable." § 1227(a)(2)(A)(i). Lozano-Arredondo petitions for review, arguing (1) his petit theft conviction does not qualify as a crime involving moral turpitude and (2) the crime occurred more than five years after his admission to the United States, so it does not bar him from cancellation. We grant the petition and remand.

First, we hold the record of conviction is inadequate to determine whether Lozano-Arredondo was convicted of a crime involving moral turpitude. Although the record shows Lozano-Arredondo was convicted of petit theft, it does not identify any particular statute of conviction, and Idaho's petit theft statute as a whole is overbroad under the categorical approach. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 476 (9th Cir. 2015) (en banc); *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159–60 (9th Cir. 2009); *Mendoza v. Holder*, 623 F.3d 1299, 1302–03 (9th Cir. 2010). Under the modified categorical approach, the record contains insufficient information to determine whether Lozano-Arredondo was convicted under one of the Idaho petit theft provisions

meeting the generic federal offense. *See United States v. Grisel*, 488 F.3d 844, 851–52 (9th Cir. 2007) (en banc).**[1]**

The effect of this inconclusive record, however, is unclear. Under *Young v. Holder*, 697 F.3d 976, 989 (9th Cir. 2012) (en banc), Lozano-Arredondo bears the burden of establishing he was *not* convicted of a crime involving moral turpitude, and an inconclusive record means he has not carried this burden. But it is an open question whether *Young* remains good law after the Supreme Court's decision in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), which suggests Lozano-Arredondo would win under an inconclusive record. Because another panel of this court has priority to address the *Young-Moncrieffe* issue, we do not reach it. Instead – because we remand on Lozano-Arredondo's second argument – we remand the modified categorical approach issue to the BIA as well. Once the *Young-Moncrieffe* question is resolved, the BIA can apply that law to Lozano-Arredondo's conviction.

The second issue is whether Lozano-Arredondo is ineligible for cancellation of removal even though he committed petit theft more than five years after his admission to the United States. The BIA concluded he is ineligible in this circumstance. Relying on its decision in *In re Cortez Canales*, 25 I. & N. Dec. 301, 307 (BIA 2010), the BIA held a conviction qualifies as an "offense under" § 1227(a)(2) if it involves a crime of moral turpitude punishable by at least a year in prison – regardless of when the crime was committed.

---

**[1]** The parties agree the Idaho theft statute is divisible. We therefore assume without deciding, solely for purposes of this appeal, that the statute is divisible.

Although we ordinarily defer to an agency's reasonable interpretation of an ambiguous statute, *see Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), the BIA's interpretation of an "offense under" § 1227(a)(2) is not entitled to deference.[2]  The BIA erroneously concluded Congress' intent had been clearly expressed at *Chevron* step one, *Cortez Canales*, 25 I. & N. Dec. at 308, and thus did not exercise its "expertise and discretion in interpreting the statute" at *Chevron* step two, *Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1149 (9th Cir. 2013).  In this circumstance, rather than interpret the statute ourselves in the first instance, "we 'remand to require the agency to consider the question afresh in light of the ambiguity we see.'"  *Id.* at 1151 (quoting *Delgado v. Holder*, 648 F.3d 1095, 1103 n.12 (9th Cir. 2011) (en banc)).

## BACKGROUND

Lozano-Arredondo entered the United States in August 1990 without being admitted.  He was convicted of petit theft in 1997.  In 2005, the Department of Homeland Security initiated removal proceedings, and Lozano-Arredondo applied for cancellation of removal under 8 U.S.C. § 1229b(b).  In 2007, an Immigration Judge (IJ) determined Lozano-Arredondo was ineligible for cancellation of removal because he had admitted to committing statutory rape.

The BIA dismissed his appeal on different grounds, concluding that his petit theft conviction made him ineligible for cancellation under § 1229b(b)(1)(C).  That statute says, in

---

[2] Because the BIA relied on its published decision in *Cortez Canales*, we review that decision under *Chevron*.  *See Lezama-Garcia v. Holder*, 666 F.3d 518, 524–25 (9th Cir. 2011).

relevant part, "[t]he Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title."  The BIA determined Lozano-Arredondo's petit theft conviction was an "offense under" § 1227(a)(2)(A)(i), which says:

> (2) Criminal offenses
>
> (A) General crimes
>
> (i) Crimes of moral turpitude
>
> Any alien who–
>
> (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
>
> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
>
> is deportable.

Lozano-Arredondo petitioned for review, and we remanded for the BIA to clarify the statutory basis upon which it dismissed the appeal. *See Arredondo v. Holder*, 623 F.3d 1317, 1319–20 (9th Cir. 2010). We concluded "the BIA [had] not address[ed] the applicability, if any, of the

exceptions outlined in the respective statutes regarding crimes involving moral turpitude (i.e., the petty offense exception [under § 1182(a)(2)] and time period limitations [under § 1227(a)(2)(A)(i)])." *Id.* at 1320.

On remand, the BIA held in an unpublished decision that Lozano-Arredondo's petit theft conviction constituted an "offense under" § 1227(a)(2) because § 1227(a)(2)'s within-five-years element does not apply in the cancellation of removal context. The BIA relied on its published decision in *Cortez Canales*, 25 I. & N. Dec. 301, which held a woman's welfare fraud conviction made her ineligible for cancellation of removal under § 1229b(b)(1)(C) because it was an offense under § 1227(a)(2)(A)(i). Although Cortez Canales did not commit the offense within five years after admission, the BIA held, "in determining which offenses are 'described under' [§ 1227(a)(2)] for purposes of [§ 1229b(b)(1)(C)], only language specifically pertaining to the criminal offense, such as the offense itself and the sentence imposed or potentially imposed, should be considered." *Cortez Canales*, 25 I. & N. Dec. at 307. The within-five-years element, it held, "pertain[s] only to aspects of immigration law," and "is not considered." *Id*.

## STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003).

## DISCUSSION

### I.  Whether Lozano-Arredondo's conviction qualifies as a crime involving moral turpitude.

We first address whether Lozano-Arredondo's petit theft conviction qualifies as a crime involving moral turpitude under either the categorical or the modified categorical approach.  "Under the categorical approach, we ask whether the full range of conduct encompassed by the criminal statute constitutes a crime of moral turpitude." *Mendoza*, 623 F.3d at 1302 (citation omitted).  "If the statute proscribes only conduct that involves moral turpitude," the inquiry ends. *Id.* at 1303.

When a statute does not satisfy the categorical approach, we may resort to the modified categorical approach, but only if the statute is divisible.  *See Lopez-Valencia v. Lynch*, 798 F.3d 863, 868 (9th Cir. 2015).  Under the modified categorical approach, we look to the *Shepard* documents to determine whether the person was, in fact, convicted of a crime involving moral turpitude as defined by federal law. *See Grisel*, 488 F.3d at 850.  These include the "charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant," "jury instructions," "bench-trial findings and rulings" or "some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 25–26 (2005).

Here, the record of conviction is inadequate to conclude Lozano-Arredondo was convicted of a crime involving moral turpitude under either the categorical or the modified categorical approach.  The only document referencing Lozano-Arredondo's petit theft conviction was a "rap sheet,"

which makes no mention of Lozano-Arredondo's statute of conviction. Nonetheless, the BIA surmised Lozano-Arredondo was convicted under Idaho Code § 18-2408(3), which provides "[p]etit theft is a misdemeanor punishable by a fine not exceeding one thousand dollars . . . or by imprisonment in the county jail not exceeding one . . . year or by both." This punishment statute, standing alone, could not provide the BIA with enough information about whether Lozano-Arredondo's statute of conviction was a crime involving moral turpitude. A different provision – Idaho Code § 18-2403 – is the only part of the Idaho Code that defines the specific acts that constitute theft in Idaho, and this provision includes acts that would not constitute a crime involving moral turpitude under federal law because they could involve only a temporary taking of property. *See* Idaho Code § 18-2403(5); *Almanza-Arenas*, 815 F.3d at 476; *Castillo-Cruz*, 581 F.3d at 1159–60. Accordingly, Idaho's petit theft statute does not qualify as a crime involving moral turpitude under the categorical approach.[3]

---

[3] The BIA's recent decision in *In re Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), does not alter our conclusion that § 18-2403 penalizes conduct falling outside the generic definition of theft. *Diaz-Lizarraga* held that generic theft does not require "a *literally* permanent intended deprivation." *Id.* at 853. Instead, it "requires an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Id.* at 854. This definition tracks Idaho's own definition of the intent required to "'deprive' another of property." Idaho Code § 18-2402(3); *see Diaz-Lizarraga*, 26 I. & N. Dec. at 852 & n.5. Nonetheless, Idaho's theft statute also penalizes the kinds of temporary takings the BIA continues to place outside of generic theft – "statutes that . . . encompass 'joyriding' . . . or other short-term takings of property." *Id.* at 850.

We turn, then, to the modified categorical approach.[4] Under this approach, we look to the record of conviction to determine whether Lozano-Arredondo was convicted under one of the Idaho theft provisions penalizing a permanent taking of property. Here, that analysis is inconclusive because nothing in the record identifies the specific part of Idaho Code § 18-2403 under which Lozano-Arredondo was convicted. The record contains no charging document, judgment of conviction, jury instructions, guilty plea or plea transcript. *Cf., e.g.*, *Grisel*, 488 F.3d at 851.

Although a rap sheet may form part of the "record of conviction," *see Kepilino v. Gonzales*, 454 F.3d 1057, 1062 (9th Cir. 2006), it is not sufficiently reliable under these circumstances to be considered under the modified categorical analysis, *see United States v. Leal-Vega*, 680 F.3d 1160, 1168–69 (9th Cir. 2012). At best, the rap sheet here is the equivalent of an "abstract of judgment," which we have held can "be used, if it is *not the only document* that is used to determine if a prior offense meets the modified categorical approach." *Id.* at 1168 (emphasis added). The rap sheet presented in this case does not "contain[] *any* detail . . . or *any* usable information about the factual basis for [Lozano-Arredondo's] conviction," or the provision under which he was convicted. *See Kepilino*, 454 F.3d at 1062. To the contrary, the rap sheet does not even cite any provision of Idaho law. As a result, the record is inconclusive as to which theft provision Lozano-Arredondo was convicted under, and the BIA erred in finding that Lozano-Arredondo was

---

[4] Lozano-Arredondo conceded in his opening brief that the Idaho theft statute is divisible, and he did not contend otherwise before the BIA. To be clear, we do not hold that the statute is divisible. We reserve that issue for another case in which the parties raise it.

convicted of a particular theft offense that qualified as a crime involving moral turpitude.

The ultimate effect of this inconclusive record, however, is unclear. Under *Young*, 697 F.3d at 989, the petitioner bears the burden of proving he was *not* convicted of a crime involving moral turpitude. *Young* holds that where, as here, the record of conviction is inconclusive, the petitioner has not met that burden. *See id.* Thus, to the extent *Young* remains good law, Lozano-Arredondo has not met his burden to establish he was not convicted of a crime involving moral turpitude.

The continuing viability of *Young*, however, is an open question after the Supreme Court's decision in *Moncrieffe*, 133 S. Ct. 1678, which suggests an inconclusive record works to a petitioner's advantage, regardless of which party bears the burden of proof. *See Almanza-Arenas*, 815 F.3d at 488–89 (Watford, J., concurring). The question whether *Moncrieffe* abrogated *Young*'s burden rule is pending before another panel of this court that has priority. *See Marinelarena v. Sessions*, No. 14-72003; Ninth Circuit General Order 4.1(a). We therefore do not reach it here. Instead – because we remand on another ground, as discussed below – we remand the modified categorical approach question to the BIA as well. Once the mandate has issued in *Marinelarena*, the BIA can apply that law to Lozano-Arredondo's conviction.

In sum, with respect to Lozano-Arredondo's argument that his petit theft conviction does not qualify as a crime involving moral turpitude, we hold Idaho's petit theft statute is categorically overbroad because it penalizes temporary takings. We also hold that under the modified categorical

approach, the record of conviction is inconclusive. For now, the effect of that inconclusive record is an unresolved question, and our analysis can go no further. Once that question is decided, the BIA can apply the governing law to determine whether Lozano-Arredondo's conviction qualifies as a crime involving moral turpitude.

## II. Whether a conviction for a crime involving moral turpitude precludes cancellation of removal even if the offense was committed more than five years after admission.

Assuming Lozano-Arredondo was convicted of a crime involving moral turpitude, we next must decide whether this conviction constitutes an "offense under" § 1227(a)(2)(A)(i) even though he was not convicted within five years of admission. *See* § 1229b(b)(1)(C). Section 1227(a)(2)(A)(i) says any alien who "is convicted of [1] a crime involving moral turpitude [2] committed within five years . . . after the date of admission, . . . [3] for which a sentence of one year or longer may be imposed, is deportable." § 1227(a)(2)(A)(i). The BIA concluded Lozano-Arredondo's petit theft conviction was an "offense under" § 1227(a)(2)(A)(i), because it was a crime involving moral turpitude for which a sentence of one year could be imposed. It is undisputed, however, that Lozano-Arredondo's conviction occurred more than five years after his date of admission. The BIA did not consider this relevant, relying on its decision in *Cortez Canales*.

The central question is thus whether § 1229b(b)(1)(C) incorporates the within-five-years element of § 1227(a)(2)(A)(i). If it does, then Lozano-Arredondo is eligible for cancellation of removal, because his petit theft

conviction did not occur within five years of his admission to the United States.  If it does not, as the BIA held in *Cortez Canales*, then his petit theft conviction may make him ineligible for cancellation.

Under *Chevron*, the BIA is entitled to deference in interpreting ambiguous provisions of the INA.**[5]**  "Judicial deference in the immigration context is of special importance, for executive officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *Negusie v. Holder*, 555 U.S. 511, 517 (2009) (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).  This deference does not apply, however, "where an agency mistakenly determines that its interpretation is mandated by plain meaning, or some other binding rule." *Gila River Indian Cmty.*, 729 F.3d at 1149.  In such a circumstance, the agency has "not yet exercised its *Chevron* discretion to interpret the statute in question." *Negusie*, 555 U.S. at 523.  Accordingly, even if its interpretation "might ultimately be reasonable," it is not entitled to deference. *Gila River Indian Cmty.*, 729 F.3d at 1149.  When an agency erroneously concludes Congress' intent is clear under step one, and has rested on that ground, we remand for the agency to exercise its expertise and discretion to interpret the statute under step two. *See Delgado*, 648 F.3d at 1103–04 & n.12.

---

**[5]** Under the "two-step framework . . . set forth in [*Chevron*], . . . we [first] determine whether the intent of Congress is clear.  If it is, both the court and the agency must give effect to the unambiguously expressed intent of Congress." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc).  (citations and internal quotation marks omitted).  "If, however, the text is ambiguous, the court proceeds to step two and considers whether the agency's interpretation was . . . 'reasonable.'" *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1143 (9th Cir. 2012) (quoting *Chevron*, 467 U.S. at 845).

Here, the BIA's decision is unpublished and thus not itself entitled to *Chevron* deference, but its interpretation of "offense under" § 1227(a)(2) in the published *Cortez Canales* decision is reviewed under *Chevron*. *See Lezama-Garcia*, 666 F.3d at 524–25. In *Cortez Canales*, the BIA did not exercise its discretion to interpret § 1229b(b)(1)(C). Instead, the BIA concluded Congress' intent was "clear" from the "plain meaning" of the statute. *Cortez Canales*, 25 I. & N. Dec. at 308. It also said its decision "clearly follows" from *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649 (9th Cir. 2004). *Id*. We disagree.

## A. Statutory Language

The language of § 1229b(b)(1)(C) is susceptible to several interpretations. Section 1229b(b)(1)(C) incorporates an "offense under" § 1227(a)(2). Section 1227(a)(2), though, is not a criminal statute; an alien cannot be convicted under it. *See Gonzalez-Gonzalez*, 390 F.3d at 652. Instead, § 1227(a)(2) lists conduct that makes an alien deportable, i.e., "deportable offenses." The *deportable* offenses in § 1227(a)(2) are *criminal* offenses committed under specified circumstances. The *deportable* offense at issue here is a kind of *criminal* offense – a crime involving moral turpitude – committed within five years after admission, for which a sentence of one year or longer may be imposed. *See* § 1227(a)(2)(A)(i).

Section 1229b(b)(1)(C) simply incorporates an "offense under" § 1227(a)(2). It does not say whether it incorporates the entire deportable offense or only part of it. From the language of the statute, the "offense under" § 1227(a)(2)(A)(i) could include: (1) only the criminal offense itself – a crime involving moral turpitude; (2) the

criminal offense plus one additional element of the deportable offense (i.e., the criminal offense plus *either* the within-five-years limitation *or* the sentence-length limitation); or (3) all three elements of the deportable offense.

The statutory language, therefore, is ambiguous on its face.

## B. The Scope of *Gonzalez-Gonzalez*

*Gonzalez-Gonzalez* did not resolve this ambiguity. There, the petitioner was convicted of a crime of domestic violence described under § 1227(a)(2)(E)(i). Based on this conviction, the BIA concluded Gonzalez-Gonzalez was ineligible for cancellation of removal. Section 1227(a)(2), however, describes "deportable offenses," whereas Gonzalez-Gonzalez – who had entered the country illegally – was inadmissible, rather than deportable. Gonzalez-Gonzalez thus argued a conviction that fell under § 1227(a)(2) could not render him ineligible for cancellation, because as an inadmissible alien, he could not be convicted of an "offense under" a provision describing only deportable offenses.

*Gonzalez-Gonzalez* rejected this argument. We held that although certain offenses described in the statutes cross-referenced by § 1229b(b)(1)(C) render *admitted* aliens *deportable*, while others render *non-admitted* aliens *inadmissible*, all offenses described in the statutes apply to all aliens – regardless of admission status – for purposes of § 1229b(b)(1)(C)'s bar on cancellation of removal. We concluded "[t]he most logical reading of 'convicted of an offense under' is . . . 'convicted of an offense *described* under' each of the three sections." 390 F.3d at 652. We held Gonzalez-Gonzalez's domestic violence conviction was

"described under" § 1227(a)(2), even though, as an inadmissible alien, he was not deportable. *Id*. at 652–53.

In *Cortez Canales*, the BIA incorrectly relied on *Gonzalez-Gonzalez* in concluding an "offense under" § 1227(a)(2)(A)(i) does not include that provision's within-five-years element. The BIA held its "decision to exclude the immigration-related provisions [i.e., the within-five-years element,] . . . clearly follows from [*Gonzalez-Gonzalez*'s] conclusion that the plain language of [§ 1229b](b)(1)(C) . . . should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole." *Cortez Canales*, 25 I. & N. Dec. at 308.

In holding an inadmissible alien could commit the offense under § 1227(a)(2)(E)(i), however, *Gonzalez-Gonzalez* did not foreclose treating the within-five-years element of § 1227(a)(2)(A)(i) as part of the offense for purposes of determining eligibility for cancellation of removal. Indeed, *Gonzalez-Gonzalez* did not in any way address the provision parallel to the one at issue in this case – whether the domestic violence offense described under § 1227(a)(2)(E)(i) includes that provision's "any time after admission" element for purposes of cancellation of removal. Accordingly, *Gonzalez-Gonzalez* does not bear on whether § 1229b(b)(1)(C) incorporates the within-five-years element of § 1227(a)(2)(A)(i).

## C. Related Provisions and Legislative History

In addition to incorrectly relying on the statute's plain meaning and *Gonzalez-Gonzalez*, the BIA wrongly concluded Congress' intent could be clearly discerned by comparing § 1229b(b)(1)(C) with a related provision, § 1229b(d)(1).

Section 1229b(d)(1) says, for purposes of cancellation of removal, "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien has committed an offense . . . that *renders the alien . . . removable* from the United States under section 1227(a)(2)."  § 1229b(d)(1) (emphasis added).   Section 1229b(b)(1)(C), by contrast, makes an alien ineligible for cancellation if he has been convicted of an offense under § 1227(a)(2), without reference to whether that offense renders the alien removable under § 1227(a)(2).  The BIA held the absence of language in § 1229b(b)(1)(C) requiring the alien to be removable under § 1227(a)(2) shows Congress did not intend to require the "immigration-related elements" of § 1227(a)(2) to be satisfied for an alien to be ineligible for cancellation of removal.  *Cortez Canales*, 25 I. & N. Dec. at 308.

The legislative history of § 1229b(b)(1)(C) undermines the BIA's reasoning.   That history indicates Congress understood § 1229b(b)(1)(C) to incorporate all elements of the deportable offenses under § 1227(a)(2).   The House Conference Report on the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 described § 1229b(b)(1) by saying:

> Section  [1229b](b)(1)  provides  that  the Attorney General may cancel removal in the case of an alien who . . . has at no time been convicted of an offense *that would render the alien* inadmissible under [§ 1182(a)(2)(A)] or *deportable under* [§ 1227](a)(2).

H.R. Rep. No. 104-828, at 213 (1996) (Conf. Rep.) (emphasis added).**[6]**

An alien is deportable under § 1227(a)(2)(A)(i) only if he committed a crime involving moral turpitude *within five years after admission*. Thus, the Conference Report contradicts the BIA's interpretation of the statute and undermines the distinction the BIA drew between § 1229b(b)(1)(C) and (d)(1). *See Garcia v. United States*, 469 U.S. 70, 76 (1984) (holding Committee Reports are an "authoritative source for finding the Legislature's intent"); *see also Samantar v. Yousuf*, 560 U.S. 305, 316 n.9, 323 (2010) (considering the House Committee Report in interpreting the Foreign Sovereign Immunities Act); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 187 n.8 (2004) (resort to legislative history is permissible when the statutory text is ambiguous).**[7]**

---

**[6]** *Gonzalez-Gonzalez* appears in dictum to have misinterpreted the House Conference Report, saying the excerpt we quote here was an earlier version of the bill, rather than the committee's description of the meaning of the final version of the bill. *See Gonzalez-Gonzalez*, 390 F.3d at 652–53. The quoted text appears in the House Conference Committee's "Joint Explanatory Statement," describing the meaning of the version of the bill set forth earlier in the report. *See* H.R. Rep. No. 104-828, at 199. The text of that bill is identical to the statute that was enacted. *Compare id*. at 48, *with* § 1229b(b)(1)(C).

**[7]** To the extent the Fifth Circuit in *Nino v. Holder*, 690 F.3d 691, 697 (5th Cir. 2012), similarly relied on the difference between the two provisions to reach the same conclusion as the BIA, the House Conference Report, which the Fifth Circuit did not address, undermines its reasoning as well.

### D. Within Five Years of "Admission"

Although none of the BIA's stated rationales justifies its interpretation at *Chevron* step one, an alternate textual ground might support the BIA's conclusion that § 1229b(b)(1)(C) does not incorporate the within-five-years element of § 1227(a)(2)(A)(i) – albeit the government has not so argued here. Section 1227(a)(2)(A)(i) says the crime must have occurred "within five years . . . after the date of *admission.*" (emphasis added). The term "admission" has a defined meaning in the immigration context, referring to "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." *Garcia v. Holder*, 659 F.3d 1261, 1267 (9th Cir. 2011) (alteration in original) (quoting 8 U.S.C. § 1101(a)(13)(A)). Some aliens seeking cancellation of removal – like Lozano-Arredondo – are never "admitted" under that definition. Thus, if § 1229b(b)(1)(C) incorporates the within-five-years element, aliens like Lozano-Arredondo arguably could *never* be deemed ineligible for cancellation under § 1227(a)(2)(A)(i). Although this result would be contrary to our holding in *Gonzalez-Gonzalez* that offenses under § 1227(a)(2) *do* apply to non-admitted aliens in the cancellation context, one way to avoid a conflict would be to exclude – as the BIA did – the within-five-years element from the "offense under" § 1227(a)(2)(A)(i).

That is not the only option, however. The BIA's approach altogether disregards the House Conference Committee Report, which evidences Congress' intent to incorporate the within-five-years element. Additionally, as we held in *Gonzalez-Gonzalez*, 390 F.3d at 652–53, Congress expected § 1227(a)(2) would apply to non-admitted aliens in the cancellation context, even though its text says it applies

only to aliens "in and admitted to the United States." § 1227(a). Given the legislative history and our decision in *Gonzalez-Gonzalez* to interpret § 1227(a)(2) broadly enough to apply to admitted and non-admitted aliens alike, there is a more consistent way to reconcile the statutory language: to likewise afford "admission" a broader meaning in this context, one that encompasses both admitted and non-admitted aliens. Lozano-Arredondo, for example, suggests the word should be read to mean physical "entry" when applied to an alien who has not been "admitted" in the § 1101(a)(13)(A) sense of the word.

Lozano-Arredondo's reading has several advantages over strictly employing a § 1101(a)(13)(A) definition of admission in this context. Applying a reasonable, context-specific meaning to "admission" would give effect to each word in the statute, rather than reading out its "within five years" language. It would also comport with both the legislative history and *Gonzalez-Gonzalez*. Otherwise, using the § 1101(a)(13)(A) definition requires ignoring either the legislative history or our holding in *Gonzalez-Gonzalez* that § 1227(a)(2) applies both to admitted and non-admitted aliens. Moreover, we have deviated from the ordinary immigration definition of "admission" in the past to make sense of the statutory scheme under § 1227(a)(2) – albeit in a different context. *See Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134–35 (9th Cir. 2001) (expanding the definition of admitted under § 1227(a)(2) to include an alien who entered the country illegally and thus was never admitted under § 1101(a)(13)(A), but later adjusted his status to lawful permanent resident). The BIA also has been willing to go beyond the § 1101(a)(13)(A) definition of admission in interpreting § 1227(a)(2)'s use of that word. *See Fuentes v. Lynch*, 837 F.3d 966, 968 (9th Cir. 2016); *In re Rosas-*

*Ramirez*, 22 I. & N. Dec. 616, 617–18 (BIA 1999) (deeming an individual admitted notwithstanding her lack of admission under the 8 U.S.C. § 1101(a)(13)(A) definition).  Reading "admission" to mean "entry" in this context is thus a plausible resolution of the statutory text.

Although we conclude this resolution makes sense, we are not yet prepared to hold it is the only reasonable interpretation.  We acknowledge this approach is imperfect because it goes beyond the ordinary immigration definition of admission.  We therefore decide only that the inclusion of the word "admission" as part of the within-five-years element does not compel the conclusion that Congress intended to exclude this element from the "offense under" § 1227(a)(2)(A)(I).

In sum, the statute is ambiguous.  The BIA erred at *Chevron* step one by concluding Congress clearly intended not to incorporate the within-five-years element of § 1227(a)(2)(A)(i).

### E. The BIA Has Not Reached *Chevron* Step Two

Because the BIA "misapprehended the clarity of the statute," misapplied *Gonzalez-Gonzalez*, and failed to consider the on-point legislative history, it also did not exercise its "expertise and discretion in interpreting the statute" at *Chevron* step two.  *Gila River Indian Cmty.*, 729 F.3d at 1149.  We recognize the BIA said "even if the language of [§ 1229b(b)(1)(C)] were found to be ambiguous, we would interpret it in the same manner." *Cortez Canales*, 25 I. & N. Dec. at 308.  But this "one-sentence caveat" is "not entitled to *Chevron* deference, because the [agency] did not provide any explanation for this decision." *Gila River Indian*

*Cmty.*, 729 F.3d at 1150. Instead, "the passing [comment] reflects 'that the [agency] has not yet exercised its *Chevron* discretion to interpret the statute in question.'" *Id*. (quoting *Negusie*, 555 U.S. at 523). "[D]eferring to the [agency's] unexplained caveat would permit the agency to sidestep its duty to bring its expertise to bear on the 'difficult policy choices' it is tasked with making." *Id*.

The BIA's construction of § 1229b(b)(1)(C) is thus not entitled to *Chevron* deference. The BIA erred by treating § 1229b(b)(1)(C) as unambiguous at step one, and it has not yet exercised its discretion at step two. We therefore set aside the BIA's interpretation of § 1229b(b)(1)(C) in *Cortez Canales*.

### III. Conclusion

We grant Lozano-Arredondo's petition and remand to the BIA. We hold, first, that petit theft under Idaho law does not qualify categorically as a crime involving moral turpitude. We also hold that under the modified categorical approach, the record of conviction is inconclusive. Because the effect of that inconclusive record presents an open legal question now pending before another panel of this court, our analysis ends there. On remand, once this burden of proof question is resolved, the BIA should determine whether Lozano-Arredondo's conviction qualifies as a crime involving moral turpitude under the modified categorical approach, unless the case is resolved on other grounds.

Second, we hold the BIA erred by deciding at *Chevron* step one that an "offense under" § 1227(a)(2)(A)(i) does not include the within-five-years element. Because the BIA "erroneously contends that Congress' intent has been clearly

expressed and has rested on that ground, we remand to require the agency to consider the question afresh." *Delgado*, 648 F.3d at 1103–04 n.12 (quoting *Negusie*, 555 U.S. at 523) (internal quotation marks omitted); *see INS v. Ventura*, 537 U.S. 12, 16–17 (2002).  In light of this holding and the explanations we have given, the BIA must reconsider its interpretation of the phrase "offense under" in § 1229b(b)(1)(C).

**PETITION GRANTED AND CASE REMANDED.**

Costs are awarded to petitioner.